**Bartholomeus T. de BONT**

v.

**Darlene P. de BONT.**

**No. 2002–593–Appeal.**

Supreme Court of Rhode Island.

June 27, 2003.

Bartholomeus deBont, *pro se.*

Sandra Terry Dobson, for Defendant.

Present: WILLIAMS, C.J., and FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on May 6, 2003, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and reviewing the memoranda of the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time.

The plaintiff, Bartholomeus T. de Bont (de Bont or plaintiff), appeals *pro se* from a Family Court decision pending entry of final judgment in this divorce action. The plaintiff and the defendant, Darlene P. de Bont (Darlene or defendant), were married

on November 14, 1987, and had one biological child, Ashley, born on August 31, 1989. The couple separated in February 1998, after plaintiff was convicted for the crime of embezzlement.[1] Subsequently, on August 19, 1998, defendant, with plaintiff's knowledge and consent, adopted a child, Matthew, who was born on June 8, 1993.[2] Although Darlene remained in Rhode Island for a substantial period after plaintiff was incarcerated, she eventually moved to Florida in January 2001. On June 4, 2001, plaintiff filed a complaint for divorce.

On January 3, 2002, after a four-day hearing in which de Bont appeared *pro se,* the trial justice rendered a written decision granting plaintiff an absolute divorce on the grounds of irreconcilable differences leading to an irremediable breakdown of the marriage. The trial justice found that Matthew was adopted by Darlene and was her child and not plaintiff's. He also denied plaintiff's claim that he was a *de facto*/psychological father to Matthew. The trial justice awarded Darlene sole custody of Ashley and temporarily denied plaintiff visitation rights until a court review demonstrated that Ashley would not be psychologically harmed by visiting plaintiff at the Adult Correctional Institutions. A decision pending entry of final judgment was entered on January 31, 2002, and plaintiff appealed.

After a final judgment entered on April 24, 2002, plaintiff filed numerous motions and pleadings, including, on May 13, 2002, an "Amended Motion for Specific Relief." A hearing was held on plaintiff's motion on June 24, 2002, and the trial justice, finding that there had been no substantial change in circumstances since the final judgment, denied several requests, including de Bont's motion for a stay pending appeal, a demand for further discovery, and a request for psychological evaluations of the parties and the children. However, notwithstanding his findings, the motion justice granted plaintiff's request to be provided with current information about Ashley's schooling and medical and mental health care records, and that defendant notify him if Ashley suffers a serious injury or contracts a serious illness. Further, the trial justice directed defendant to provide plaintiff with Ashley's address, and furnish photographs of the child every six months. Finally, he ordered that defendant refrain from making disparaging remarks about plaintiff in Ashley's presence. The plaintiff filed an appeal from that order.

Before addressing the substantive issues on appeal, we first must consider the timeliness of plaintiff's appeal from the decision pending entry of final judgment. Although, as noted, the decision was entered on January 31, 2002, and on March 1, 2002, plaintiff filed a motion to extend the appeal period with an affidavit alleging that, despite his good faith efforts to file his ap-

---

1. In February 1998, plaintiff was convicted in state court of seven counts of embezzlement and was sentenced to serve eight years in the Adult Correctional Institutions. Since 1998, plaintiff has been incarcerated on state charges and faces a federal detainer as a parole violator.

2. Although the parties commenced the adoption procedure under both of their names, the adoption agency, Wide Horizons for Children, denied plaintiff's request for adoption based upon his criminal activities. Nevertheless, Darlene proceeded with the adoption, and on August 19, 1998, Darlene finalized the adoption of her new son, Matthew, and became his sole parent. At trial, the adoption agency submitted documents that had been subpoenaed by plaintiff attesting to and confirming Darlene's sole adoption of Matthew. The plaintiff was denied reopening the adoption based upon the agency's evidence together with the final decree of adoption, plaintiff's actual knowledge of that adoption, and plaintiff's assent to that adoption.

peal on time, he did not receive notice of the decision pending entry of final judgment until after the appeal period had lapsed. Although plaintiff's motion to extend the appeal period was granted, the order failed to specify the date by which the appeal should be filed. Further, plaintiff contends that he mailed a notice of appeal on February 22nd, the same day he received a copy of the decision pending entry of final judgment, but this filing was returned to him by the clerk of the Family Court. Pursuant to Article I, Rule 4(a) of the Supreme Court Rules of Appellate Procedure, the appeal deadline was February 20, twenty days after the decision pending entry of final judgment was entered. However, Rule 4(a) further states that a trial justice may allow for an additional thirty days to appeal upon a showing of excusable neglect. This Court has held that the "additional thirty days begins running at the *expiration* of the original twenty-day period, and *not* from the date the motion to extend is granted." *Millman v. Millman*, 723 A.2d 1118, 1119 (R.I.1999) (per curiam). (Emphasis added.) Thus, the time for plaintiff to file an appeal was extended until March 22, 2002. We note that plaintiff's notice of appeal bears a date stamp of March 2002, but the specific date is illegible. Accordingly, notwithstanding the fact that plaintiff's notice of appeal is not clearly date-stamped, we are inclined to accept plaintiff's representation that his notice of appeal initially was filed on February 22 and again filed before March 22, 2002.

■ The plaintiff has raised numerous issues for our consideration, many of which are without merit. Accordingly, we shall address only those issues that warrant our review and were properly preserved in the trial court. Initially, plaintiff alleges that the trial justice erred in many of his evidentiary rulings on the admission and exclusion of evidence, as well as his refusal to hear the testimony of three witnesses supporting plaintiff's post-judgment motion. This Court will not disturb a trial justice's ruling concerning the admissibility of evidence, absent a showing of abuse of discretion. *State v. Neri*, 593 A.2d 953, 956 (R.I.1991). Based on our review of the record, we are satisfied that plaintiff's evidentiary charges are without merit. We note that de Bont has failed to identify the witnesses he sought to present nor has he indicated the substance of their expected testimony. Without these specifics, we decline to address plaintiff's claim of error. Accordingly, plaintiff has failed to demonstrate that, as a result, the trial justice abused his discretion or otherwise was wrong in any evidentiary rulings.

■ Additionally, plaintiff argues that he should be considered a *de facto* /psychological parent to Matthew and also that he was wrongfully denied custody and visitation rights to Ashley. In finding that plaintiff was not an equitable parent to Matthew, the trial justice concluded that plaintiff's contact with Matthew, because of the parties' separation and plaintiff's incarceration, had been intermittent and quite insignificant. The trial justice concluded that plaintiff was not a *de facto* /psychological parent to Matthew because plaintiff had not regularly provided Matthew with caregiving or nurturing or otherwise acted as a parent in any meaningful way. *Rubano v. DiCenzo*, 759 A.2d 959 (R.I.2000). In *Rubano*, a non-biological same-sex partner sought visitation with her former partner's biological child asserting that she was the *de facto* /psychological parent to the child because an emotional bond existed between them, that she had provided a substantial share of the child's care, had lived with the child for four years, and the parties had entered into an agreement for co-parenting and

visitation after they ceased living together as a family unit. This case does not approach the facts in *Rubano*. The parties had no agreement concerning support, parenting responsibilities or visitation, and this inmate-plaintiff had never parented Matthew in any respect. The plaintiff admitted that he had never resided with Matthew nor had he ever read bedtime stories to him, brought him to the doctor's office or attended school functions. Thus, the trial justice determined that no parent-child relationship existed between plaintiff and Matthew. We agree with this conclusion. There is no evidence that plaintiff and Matthew have any relationship, let alone that of father and son.[3]

■ We next turn to plaintiff's argument that he was wrongfully denied custody and visitation rights to Ashley. With regard to these issues, the trial justice properly relied upon *Pettinato v. Pettinato*, 582 A.2d 909 (R.I.1990), in which this Court set forth the factors to be considered in determining the best interests of the child, including the reasonable preference of the child, the interaction and interrelationship between the child and his or her parents, the adjustment to the child's home, school, and community, and the moral fitness of the child's parents. *Id.* at 913–14. When stacked up against these factors, plaintiff's parenting ability abysmally fails. The evidence overwhelmingly demonstrates that only defendant provides the daily physical, financial, and emotional support for her children. Ashley's therapist at the time of trial testified that Ashley was particularly content and comfortable with her mother and her brother, Matthew, and was well-adjusted to her home and school; he also testified that Ashley emphatically insisted that she wanted no contact with plaintiff,[4] and that forcing such contact could cause lasting psychological harm to Ashley. In fact, Ashley's maternal grandmother testified that when she offered to take Ashley to visit plaintiff, Ashley ran to her room crying, "No, no." Consequently, in light of the evidence presented at trial, the trial justice found that "[d]efendant is the nurturing parent of Ashley and is currently providing for all of the child's physical and emotional needs." Further, he found that Ashley "prefers to live with her mother and appears [to be] well adjusted to [d]efendant's home."

■ Generally, custody and visitation decisions are within the sound discretion of the trial justice. *Burrows v. Brady*, 605 A.2d 1312, 1317 (R.I.1992) (citing *Paolino v. Paolino*, 420 A.2d 830, 834 (R.I.1980)). Here, Ashley testified that she did not want to have any contact with her inmate-father, and the trial justice found that it was not in her best interests to force her to engage in visitation with plaintiff. Based upon Ashley's testimony, the trial justice's order was sound and proper. "It is well-settled that the findings of a trial justice sitting without a jury are entitled to great weight and will not be disturbed on appeal unless those findings are clearly wrong or the trial justice overlooked or misconceived material evidence." *DiMattia v. DiMattia*, 747 A.2d 1008, 1008 (R.I. 2000) (mem.) (citing *Seabra v. Trafford–Seabra*, 655 A.2d 250, 252 (R.I.1995)). We

---

3. Ashley testified that Matthew does not really know plaintiff nor does he ever refer to him as his father because Matthew never communicates with plaintiff.

4. In a letter addressed to the trial justice dated March 20, 2002, Ashley's therapist explained that Ashley adamantly stated that "she does not want to visit her father in prison" or "receive any communication from him in the form of letters or phone calls," the former of which "she refuses to open."

are satisfied that the trial justice did not err nor did he overlook or misconceive material evidence.

Accordingly, although the plaintiff's appeal from the decision pending entry of final judgment was timely, it is without merit. The plaintiff's appeal is denied and dismissed and the judgment appealed from is affirmed. The papers in this case may be remanded to the Family Court.

Justice FLAHERTY did not participate.