Steven **PALIN**

v.

JoAnne **PALIN.**

No. 2010–211–Appeal.

Supreme Court of Rhode Island.

April 11, 2012.

Bradley Michael Orleck, Esq., for Plaintiff.

Christopher M. Lefebvre, Esq., Pawtucket, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

In this appeal, we are asked to decide whether a Family Court justice erred in finding that loans taken out by the defen-

dant, JoAnne Palin, to pay for the college educations of her and the plaintiff's, Steven Palin's, children are not marital debt. JoAnne[1] appeals from an amended decision pending entry of final judgment of divorce. She argues on appeal that the loans at issue should have been considered marital debt by the trial justice because they were incurred during the marriage and were for the benefit of the couple's children. According to the defendant, public policy merits this conclusion. This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the decision of the Family Court.

## I

### Facts and Procedural History

Steven and JoAnne were married on September 8, 1996. They have two children, Lynn and Andrew,[2] both of whom were adults at the time of the divorce proceedings. Steven filed for divorce on September 18, 2008, citing irreconcilable differences that led to the irremediable breakdown of the marriage. JoAnne filed a counterclaim in which she asked the court to deny and dismiss Steven's complaint and to grant her a divorce on the grounds of irreconcilable differences, adultery, and extreme cruelty.

A hearing was held on November 9, 2009, at which time the parties represented that they had reached an agreement on all legal issues save for the payment of the aforementioned loans. The trial justice indicated that he would hear the case in two parts. First, he would take testimony with respect to the issues upon which the parties had agreed; then, he would entertain testimony concerning the student loans.

At the conclusion of the first portion of the trial, the trial justice rendered a bench decision granting both Steven's complaint and JoAnne's counterclaim on the grounds of irreconcilable differences and assigning the marital estate in accordance with the parties' agreement. He then immediately took testimony concerning the single issue that had been reserved for contested litigation.

The issue at hand concerned student loans that JoAnne took out to pay for the children's college educations. JoAnne testified that when she and Steven were first married, Steven wanted to adopt Lynn and Andrew and assured her that, if she let him adopt, he would "make sure" that the children received college educations and he would "pay for everything for the kids." JoAnne further testified that in 2000, she and Steven specifically discussed their daughter Lynn's desire to attend "school for [a]esthetics,"[3] and that at that time he told her: "Absolutely, whatever she needs. Get the loans. * * * Sign whatever it takes. Don't worry about it." At some point between 2005 and 2007, JoAnne

---

1. In this opinion, we refer to plaintiff as Steven and to defendant as JoAnne for the purpose of clarity only. We intend no disrespect.

2. Lynn and Andrew are JoAnne's children from a previous marriage. Steven adopted the children around 1998.

3. The American Heritage Dictionary of the English Language 28 (4th ed. 2000) defines "aesthetics" as "[t]he study of the psychological responses to beauty and artistic experiences."

signed a promissory note for a $6,000 loan to pay for Lynn's education. JoAnne testified that she made payments on this loan for three and a half years, using a joint checking account that she shared with her husband, and that her husband never expressed any concern or unwillingness to be responsible for the loan.

JoAnne also testified that she and Steven had discussions about educating their son, Andrew. According to JoAnne, Steven was "very excited that Andrew was going to college" and never voiced any concern about his attending Rhode Island College or about his level of maturity.[4] Furthermore, JoAnne testified that plaintiff told her to "[g]o ahead and sign the student loans" for Andrew's education, stating: "If only one parent needs to sign them, just sign them. * * * Don't worry about it. Whatever it takes, we are going to get these kids college educations." In August 2005, JoAnne took out "over $40,000 worth" of loans for Andrew's education. JoAnne suggested that Steven's name does not appear on the loan documentation because "he was probably on a deployment somewhere" when the loans were taken out.

JoAnne further testified that neither Lynn nor Andrew had contributed any money to help pay off the loans in question. She also admitted on cross-examination that "money was very tight" and had been a concern throughout "most of the marriage." Despite this admission, however, she denied ever having had a conversation with her husband about any discomfort he might have had in taking out student loans, given the financial condition of the family. JoAnne testified that she never provided Steven with copies of any of the student-loan packages. She also did not provide any documents at the hearing indicating that Steven had agreed to pay for the children's educations. Nevertheless, JoAnne requested "assistance from [her] husband in helping" to pay off the student loans for Lynn and Andrew, which, she testified, she was unable to satisfy by herself.

The couple's daughter, Lynn, also testified at the November 9, 2009 hearing. She testified that "[e]ducation was a must in [her] family" and that her father was "adamant" about her going to college. In that respect, according to Lynn, Steven told her that he would pay for her college education, he was aware that JoAnne had taken out a loan for Lynn's education, and he supported Lynn's plan to attend cosmetology[5] school, which she did in 2006. Lynn also testified that, prior to attending cosmetology school, she had attended Bryant University in 2002 and 2003; she stated that her uncle paid for her education there as a gift. She conceded that, at the time that she was attending Bryant, her family was going through financial hardship and she did not want to burden her parents with student loans. On cross-examination, Lynn admitted that in the early part of 2009, she sued her father in District Court with respect to an unrelated landlord-tenant matter and that she had a lot of animosity toward her father as a result of her parents' divorce.

Steven testified at the hearing on November 9, 2009, that he "ha[d] never seen any documentations as far as the specifics on the loans for either of the children" until one week before the hearing. Steven

---

4. On cross-examination, however, JoAnne admitted that she herself expressed concern to her husband about Andrew's level of responsibility during his last couple of years of high school.

5. "Cosmetology" is defined by The American Heritage Dictionary of the English Language 413 (4th ed. 2000) as "[t]he study or art of cosmetics and their use."

admitted, however, that he knew about a student loan "outstanding for the benefit of [his] daughter," but he stated that he had found out about the loan only after Lynn had graduated from cosmetology school. He also testified that he was under the impression that Lynn was giving JoAnne money to pay off the loan and that JoAnne was depositing this money into the joint checking account that she and Steven shared, then making payments on the loan from that account.[6]

Steven further testified that he was not aware that JoAnne had taken out loans for Andrew's education until "after [Andrew] was already enrolled and going [to school]" and that he was "in disagreement" with this on account of the family's dire financial circumstances and his concern about Andrew's level of responsibility. According to Steven, on "[s]everal different occasions," he had conversations with his son about transferring from Rhode Island College to Community College of Rhode Island to reduce expenses. Steven testified that he had similar conversations with JoAnne. Steven also testified that he never signed any documents with respect to student loans for Andrew, that JoAnne never presented him with any loan documents, and that he never had any conversations with his wife about budgeting for these loans. He stated that he and JoAnne were living "paycheck to paycheck" and were not in a position to take out loans for Andrew's education.

Steven offered contradictory testimony with respect to promises he made to pay for his children's college educations. He first testified that he wanted Lynn and Andrew to be educated, that he encouraged education, and that he had promised to provide the children with college educations. He also admitted that he "told [his] children that [he] would pay for their education[s] to the best of [his] ability." Later in his testimony, however, Steven denied ever promising to pay for the children's educations.

At the conclusion of the contested portion of the hearing, the trial justice reserved decision and directed the parties to submit written memoranda within thirty days. On January 6, 2010, a decision pending entry of final judgment was entered, wherein the trial justice ordered that judgment for divorce may be entered for the parties based on "irreconcilable differences between the parties which have caused the irremediable breakdown of the marriage." The trial justice made specific findings with respect to all the issues of the divorce, save for "[t]he issue regarding the [p]laintiff's obligation to contribute to the outstanding student loan obligations accrued during the marriage."

On January 20, 2010, the trial justice issued a written decision addressing the student-loans issue. The trial justice recounted the testimony of the witnesses and "found the testimony of both [JoAnne] and Lynn * * * to be evasive, less than credible and fraught with bias and prejudice." In contrast, the trial justice found Steven's testimony "to be forthright and credible." The trial justice further found that Steven "never co-signed or signed any loans for the benefit of the children," and that the loans in question "were signed without his consent and that he did [not] know of the same until afterward." The trial justice pointed out that "documentary evidence of these loans was never introduced into evidence as to whether or not the loans were actually for the benefit of either of the children," and that at the time that these loans were executed "the parties were in dire financial straits," as demonstrated by all three hearing witnesses. According to

---

6. Steven testified that he did not know the identity of the loan's lender.

the trial justice, Steven's statements expressing his desire to assist the children with their college educations were not contractual, but "precatory in nature." Based on all of these reasons, the trial justice found that the loans at issue were not marital debt and that, as a result, the obligation to repay the same rested solely upon JoAnne.

An amended decision pending entry of final judgment was entered on March 3, 2010. This decision amended the January 6, 2010 decision pending entry of final judgment to include the following language concerning the contested student loans:

> "Relative to the student loans, the [c]ourt finds that * * * all alleged college loans taken out by the [d]efendant for the benefit of the parties [*sic*] minor children were taken out in [defendant's] name individually. At no time did the [p]laintiff co-sign any of these loans and as such the [c]ourt will not find these to be a marital debt and on the contrary finds that any obligation to repay same would rest solely upon the [d]efendant wife."

This amended decision also attached, and incorporated by reference, the January 20, 2010 decision finding that the loans in question were not marital debt.

JoAnne filed a notice of appeal to this Court on March 23, 2010. On June 21, 2010, Steven filed a motion to dismiss JoAnne's appeal "on the grounds that the notice of appeal was filed more than 30 days after the decision pending entry of the final judgment for divorce."[7] Steven argued in his motion that JoAnne should have filed her appeal notice within the requisite time period—as set forth in Article I, Rule 4 of the Supreme Court Rules of Appellate Procedure—after the trial

justice's January 20, 2010 decision concerning the student loans. JoAnne objected to Steven's motion to dismiss, arguing that she appealed the trial justice's March 3, 2010 amended decision pending entry of final judgment, not the January 20, 2010 decision, as alleged by Steven, and that her appeal was "clearly timely." On September 23, 2010, this Court denied Steven's motion to dismiss and directed the parties "to submit supplemental Rule 12A statements containing argument and citations of authority addressing the issue of the timeliness of the defendant's appeal."

## II

### Standard of Review

 "The Supreme Court 'will not disturb findings of fact made by a trial justice or magistrate in a divorce action unless he or she has misconceived the relevant evidence or was otherwise clearly wrong.'" *Cardinale v. Cardinale*, 889 A.2d 210, 217 (R.I.2006) (quoting *Koutroumanos v. Tzeremes*, 865 A.2d 1091, 1097 (R.I. 2005)). "Consequently, 'unless it is shown that the trial justice either improperly exercised his or her discretion or that there was an abuse thereof, this Court will not disturb the trial justice's findings.'" *Id.* at 217–18 (quoting *Koutroumanos*, 865 A.2d at 1097). Questions of law in an appeal from the Family Court, however, are reviewed *de novo*. *Curry v. Curry*, 987 A.2d 233, 238 (R.I.2010).

## III

### Discussion

#### A

### Timeliness of Appeal

██ We first address the timeliness of JoAnne's appeal. Steven, in his supple-

---

7. We note that Article I, Rule 4(a) of the Supreme Court Rules of Appellate Procedure requires appeals in civil cases to be filed "within twenty (20) days of the date of the entry of the judgment, order, or decree appealed from." To the extent that plaintiff asserts that Rule 4 sets a thirty-day time limit for such appeals, he does so in error.

mental memorandum, argues that the twenty-day appeal period commenced on January 20, 2010, because that is the date on which the trial justice issued his decision regarding the student loans. According to Steven, the appeals period begins to run on the first day following the day when the first valid appealable order is entered; he argues that the January 20, 2010 decision is a valid order "because it clearly notes when it was signed by the judge and entered by the clerk." Steven also asserts that "a party to a divorce may appeal an interlocutory decision or a decision pending entry of final judgment."

In her supplemental memorandum, JoAnne admits to filing her notice of appeal more than twenty days after entry of the January 20, 2010 decision, but she argues that this is "procedurally [in]significant" because the January 20, 2010 decision "was not a final judgment," as it "treated only a single issue in the case." She instead chose to appeal from the March 3, 2010 amended decision pending entry of final judgment. JoAnne argues that she timely filed an appeal to this Court within twenty days after entry of that amended decision.

Rule 4(a) requires appeals in civil cases to be filed "within twenty (20) days of the date of the entry of the judgment, order, or decree appealed from." We consistently have held that a decision pending entry of final judgment of divorce is appealable pursuant to Rule 4(a). *See Thompson v. Thompson,* 973 A.2d 499, 503, 505 (R.I. 2009) (hearing appeal from amended decision pending entry of final judgment); *de Bont v. de Bont,* 826 A.2d 968, 970 (R.I. 2003) (stating that pursuant to Rule 4(a), appeal deadline was "twenty days after the decision pending entry of final judgment was entered"); *Craveiro v. Craveiro,* 773 A.2d 896, 898 (R.I.2001) (citing Rule 4(a)

and stating that "[a] party who contests a divorce must file his or her appeal within twenty days of the decision pending entry of final judgment"); *Bina v. Bina,* 764 A.2d 191, 192 (R.I.2000) (mem.) ("This Court has declared that '[b]oth the language of the applicable statute and Rhode Island case law make clear that a party to a divorce may appeal an interlocutory decision or a decision pending entry of final judgment.'" (quoting *Koziol v. Koziol,* 720 A.2d 230, 232 (R.I.1998))).

On March 3, 2010, the trial justice issued an amended decision pending entry of final judgment, wherein the justice found that the loans in question were not marital debt. Twenty days later, on March 23, 2010, JoAnne appealed the amended decision. Pursuant to Rule 4(a) and our case law, such an appeal was proper and timely. Steven fails in his attempts to persuade us that the twenty-day appeal period set forth in Rule 4(a) commenced on January 20, 2010—the date that the trial justice issued his decision regarding the student loans. Rule 58(a) of the Family Court Rules of Procedure for Domestic Relations states that "[e]very judgment shall be set forth on a separate document" and that "[a] judgment is effective and shall be deemed entered when so set forth and signed by the clerk." Consistent with this requirement, we previously have declined to consider appeals taken from a trial justice's written decision. *See East Providence Credit Union v. Brown,* 104 R.I. 92, 92, 242 A.2d 428, 428 (1968) (denying the plaintiff's appeal because such appeal was taken "from the trial justice's decision, rather than from a judgment as provided for by the rules"). The appealable "judgment, order, or decree" in this case was the amended decision pending entry of final judgment entered on March 3, 2010.[8]

8. We pause to observe that the January 6, 2010 decision pending entry of final judgment

We hold, therefore, that JoAnne's appeal therefrom was timely and is properly before this Court.

## B

### Student Loans

█ The substantive issue on appeal in this case is whether the trial justice erred in finding that the student loans taken out by JoAnne to pay for the educations of her and Steven's children are not marital debt. JoAnne asserts that the Family Court "has power to allocate marital debt," even "in a case where the assets are not at issue." JoAnne points to an unpublished opinion from the Ohio Court of Appeals, *Vergitz v. Vergitz*, 2007 WL 901597 (Ohio Ct.App. Mar. 23, 2007), for the proposition that "parents' loans incurred during the marriage by one spouse for the educational benefit of a child are marital debts," and she further points to a Rhode Island case, *Curry*, as being "similar in princip[le]." JoAnne argues that the trial justice "erred as a matter of law" by not determining the student loans to be marital debt and by "overlook[ing] salient uncontradicted evidence in determining the allocation." Specifically, JoAnne points to her own testimony that Steven "directed her to do the necessary to effect the[ir] daughter's college education" and that he "knew after the fact that [she] was paying the loans out of the spouses' joint checking account."

JoAnne also points out that Steven "admitted on the stand that the loans were taken out for the benefit of the children * * * during the marriage * * * after he had repeatedly consented to providing the children with a college education." Finally, JoAnne urges us to reverse the trial justice's decision on public policy grounds.

In response, Steven argues that the trial justice "did not err as a matter of law, but rather * * * clearly explained his reasoning within the facts of this case throughout his [d]ecision." Steven further points out that there was "no consent by [him] * * * in regard to the alleged loans and no ratification was proven," such that JoAnne "acted separately from the marital structure and acted as an individual." Steven argues that to automatically consider student loans taken out by one parent to be marital debt solely on the basis that the debt was incurred during the marriage would be against public policy. Finally, Steven asserts that even if we deem the student loans at issue to be marital debt, the trial justice's error in holding otherwise was harmless because the debt properly was assigned to JoAnne.

█ The equitable distribution of property is a "three-step process," which requires the trial justice first to "determine which assets are marital property," then to "consider the factors set forth in [G.L.1956] § 15–5–16.1(a)," [9] and finally to

---

was not appealable because it did not resolve all the issues between the parties. *See Cardinale v. Cardinale*, 889 A.2d 210, 228 (R.I. 2006) ("We now unequivocally declare that * * * all the issues between the parties shall be adjudicated in a single proceeding. The decision shall be embodied in a decision pending entry of final judgment, followed by a final judgment entered in accordance with the Rules of Procedure. Whenever fewer than all issues are decided, the trial justice shall set forth on the record his or her reasons for adjudicating fewer than all the claims between the parties and direct the entry of judg-

ment in accordance with Rule 54(b).''). In the case before us, we commend the trial justice for hearing this divorce expeditiously and in a single proceeding. We recognize, however, that the entry of a decision pending entry of final judgment that fails to embody all the issues between the parties suggests the practice of bifurcation that we frequently have disapproved.

9. Upon divorce, G.L.1956 § 15–5–16.1(a) provides as follows:

"In addition to or in lieu of an order to pay spousal support made pursuant to a

"distribute the property." *Koutroumanos,* 865 A.2d at 1096. We previously have said that determining what constitutes marital property and dividing it in an equitable fashion "is within the 'sound discretion of the trial court.'" *Curry,* 987 A.2d at 238 (quoting *DiOrio v. DiOrio,* 751 A.2d 747, 750 (R.I.2000)). "Further, '[a]s long as this Court is able to review a lower court's decision and to determine therefrom that all the necessary facts and statutory factors were considered,' the trial justice need not 'explicitly list[ ] his or her findings on each factor.'" *Id.* (quoting *Chiappone v. Chiappone,* 984 A.2d 32, 37 (R.I.2009)).

Although § 15–5–16.1 does not explicitly permit a trial justice to assign marital debt, we previously have reviewed lower courts' assignments of marital debt in the same fashion as assignments of marital assets. *Curry,* 987 A.2d at 239, 240 (affirming trial justice's assignment of student-loan debt, taken out by husband for son's education, to husband); *Thompson,* 973 A.2d at 509 (affirming trial justice's assignment of debts, on credit cards standing in each party's name, to husband and wife individually); *Koutroumanos,* 865 A.2d at 1098–99 (affirming classification of credit-card debt as marital debt and assignment of such debt to husband). It is clear from these precedents that a trial justice has the authority to classify and assign marital debt.

■ Although debts incurred solely by one spouse during the course of the marriage may well be deemed marital in nature, we are satisfied that such is not always the case. Our statutes do not create a presumption concerning whether such debts are marital or nonmarital, and we will not infer one judicially. Rather, a trial justice properly may consider all the circumstances surrounding the debt, including the purpose of the debt, the receipt of the benefits, the conduct of the parties concerning the debt, the consent or lack thereof by the nonsignatory spouse, and the knowledge of the debt by said spouse at the time the debt was incurred.

In the case at hand, our analysis is largely informed by the credibility determinations and findings of fact of the trial justice, to which we afford great deference. *See B.S. International Ltd. v. JMAM, LLC,* 13 A.3d 1057, 1062 (R.I.2011) ("We accord a substantial amount of deference to [the credibility] determinations" that a trial justice sitting without a jury makes "in order to arrive at the necessary find-

complaint for divorce, the court may assign to either the husband or wife a portion of the estate of the other. In determining the nature and value of the property, if any, to be assigned, the court after hearing the witnesses, if any, of each party shall consider the following:

"(1) The length of the marriage;
"(2) The conduct of the parties during the marriage;
"(3) The contribution of each of the parties during the marriage in the acquisition, preservation, or appreciation in value of their respective estates;
"(4) The contribution and services of either party as a homemaker;
"(5) The health and age of the parties;
"(6) The amount and sources of income of each of the parties;

"(7) The occupation and employability of each of the parties;
"(8) The opportunity of each party for future acquisition of capital assets and income;
"(9) The contribution by one party to the education, training, licensure, business, or increased earning power of the other;
"(10) The need of the custodial parent to occupy or own the marital residence and to use or own its household effects taking into account the best interests of the children of the marriage;
"(11) Either party's wasteful dissipation of assets or any transfer or encumbrance of assets made in contemplation of divorce without fair consideration; and
"(12) Any factor which the court shall expressly find to be just and proper."

ings of fact."). The trial justice found JoAnne's testimony—that she and Steven had discussed taking out loans for their children and that Steven had agreed that JoAnne should do so—"to be evasive, less than credible and fraught with bias and prejudice." Conversely, the trial justice found Steven's testimony "to be forthright and credible," and he characterized Steven's statements expressing his desire to assist the children with their college educations as merely "precatory in nature." The trial justice specifically found that the loans were signed by JoAnne without Steven's consent and that Steven had no knowledge of the loans until after they had been signed. The trial justice further found that "documentary evidence of these loans was never introduced into evidence as to whether or not the loans were actually for the benefit of either of the children." The trial justice also took note of testimony by all three hearing witnesses that, at the time that the loans were taken out, the family was in "dire financial straits." In light of these findings, we are of the opinion that the trial justice's exclusion of these loans from the marital estate was a sustainable exercise of his discretion to classify and assign marital debts. We therefore affirm.

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the decision of the Family Court. The record of the case shall be remanded to the Family Court.