April 16, 2019

**Supreme Court**

No. 2018-53-Appeal.
(P 15-1845)

Diane Giarrusso          :

          v.          :

Paul Giarrusso.          :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Diane Giarrusso                    :

v.                    :

Paul Giarrusso.                    :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.**  Before us are former spouses who disagree about the ex-husband's entitlement to visitation with the two dogs that they acquired during their marriage.  This case came before us pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.  For the reasons set forth in this opinion, we affirm the order of the Family Court.

## I

## Facts and Procedural History

In October 2016, after twenty-three years of marriage, the plaintiff, Diane Giarrusso, and the defendant, Paul Giarrusso, entered into a Marital Settlement Agreement (MSA), formalizing the terms of the dissolution of their marriage.[1]  A final judgment officially dissolving the marriage entered in January 2017; the judgment incorporated the MSA without merging it.  Paragraph fourth of the MSA gave Diane "all right title and interest in and to [the two dogs:] the greyhound 'Marox'

---

[1] We shall refer to the parties by their first names to avoid any confusion; no disrespect is intended.

and the Chihuahua 'Winnie.' [Paul] [was] permitted to take the dogs for visits from Tuesday morning at 8 a.m. through Thursday morning at 8:00 a.m."[2]

Paul enjoyed his weekly visitation with Marox and Winnie from October 2016 until the end of March 2017, when this simple arrangement went awry and Diane unilaterally ceased allowing the weekly visits. In May 2017, Paul filed a motion for post-final judgment relief, claiming that Diane had denied his visitation time with the dogs for several weeks. Paul requested that the Family Court enforce the MSA by ordering Diane to comply with the visitation schedule, provide makeup visits for the weeks denied to him, and award him attorney's fees for his pursuit of the court-enforcement order. Diane objected to Paul's motion and, in July 2017, filed her own motion for relief. Diane claimed that Paul had not properly cared for the dogs when they were with him and had attempted to keep the dogs away from her, thereby breaching the MSA. Diane sought to enjoin and restrain Paul from having any time with the dogs.

A justice of the Family Court held a hearing on December 4, 2017; Paul and Diane testified, and the hearing justice reviewed text messages and emails exchanged between the parties as well as veterinary bills and records. Diane testified that Paul had not taken proper care of the dogs since the couple's separation and that his failure to properly care for the dogs constituted a breach of the MSA. She testified that Marox returned from one visit with one of his claws damaged, hanging and bleeding. Marox returned from another visit with a "huge bubble on his lip." Diane took

---

[2] The final judgment of divorce added that Diane and Paul

> "agreed that should [Diane] move outside of the state of Rhode Island where it would no longer be feasible for [Paul] to have weekly visitation with the dogs as scheduled in the Marital Settlement Agreement, [Paul] would then have the dogs for three months during the summer, a week around Christmas, a week in February and a week in April, said weeks to be agreed by the parties."

Marox to the vet both times. According to Paul, the MSA gave Diane complete control over the care of the dogs, such that he could not take them to the vet or make any decisions about their care. He testified that all he could do was play with them. He also testified that he heard about the damaged claw for the first time while in court and that the bubble on Marox's lip had appeared while he was away for a two-week work-related trip.

According to Diane, the final straw for her occurred on March 29, 2017, the last day she allowed Paul his visitation with Marox and Winnie. That afternoon, Paul had contacted Diane because the dogs were acting strangely and Winnie was whimpering. Paul testified that he knew something was wrong with Winnie because he "let out a cry" when Paul picked him up to put him on Paul's bed.[3] Paul called Diane and held the phone close to Winnie so Diane could hear the tone of the whimper. The erstwhile spouses argued through text messages about whether Diane would pick up only Winnie to take him to the vet or whether she would pick up both dogs because, according to Diane, the dogs became anxious when they were separated. Diane and Paul eventually agreed that Diane would pick up both dogs so she could take Winnie to the vet.

When Diane arrived at Paul's house, however, Marox was missing. Paul testified that he had let the dogs out to relieve themselves and he thought both dogs had returned inside the house, but then he could not find Marox.[4] Diane testified that Marox's disappearance was posted on Facebook and that she, friends, and neighbors spent an hour and a half looking for the greyhound. Paul testified that his sister helped in the search as well. Diane testified that she "was so upset and hysterical" during the search effort that she "was puking on the side of the road." Eventually, Paul found Marox, who had apparently been in his house the entire time, stuck in a closet. Paul had

---

[3] Paul further explained: "[B]ecause, naturally, the dogs sleep in my bed."
[4] Paul also testified that his yard was not fenced but that the dogs did not go far before relieving themselves and returning inside for a treat.

been tipped off by Winnie, who was sitting outside the closed closet door. According to Diane, when she saw Marox, the dog was in Paul's arms, "violently shaking, like it was traumatized." Diane testified that she "was already hysterical at that point[,] [but] then [she] went right over the top, screaming and yelling and swearing at the top of [her] lungs."[5]

Paul also testified that he was emotional on March 29, crying over Marox's disappearance both before Diane arrived and throughout the search for Marox. He stated that he had not tried to trick Diane by hiding Marox in a closet and then claiming Marox had run off, and that he had been genuinely confused because, after he had spoken with Diane on the phone, he had let the dogs out to relieve themselves and thought that both dogs had come back inside. He testified that he had tried to see the dogs in the weeks following March 29, but Diane had not responded to his communications. During his testimony, Paul's distress about the litigation over the dogs was palpable.

At the end of the hearing, Diane argued that the hearing justice should withdraw the court's approval of the MSA because, in light of the incidents described during the testimony, the MSA provision allowing Paul weekly visitation was inequitable. For his part, Paul argued that Diane had breached the terms of the MSA, which she had effectively admitted when she stated that she had not allowed him to see the dogs since March 29.

The hearing justice stated her findings of fact and conclusions of law on the record, all of which were memorialized in an order entered on January 12, 2018.[6] The hearing justice found that

---

[5] Diane also complained that Paul's driveway was icy and not safe for dropping off the dogs or picking them up, especially because he lived on a busy road, where a prior dog of theirs had been hit by a car.

[6] There was also an order entered on December 28, 2017, to which Diane objected as "not completely set[ting] forth the full findings of the [c]ourt" from the December 4 hearing. The final order entered on January 12, 2018 recites the same findings of fact and relief granted while adding

- 4 -

the MSA unambiguously gave Paul the right to visitation with the dogs every week from Tuesday to Thursday and did not provide for splitting the costs of the care and maintenance of the dogs. The hearing justice also found that both Paul and Diane loved the dogs and wanted to care for them and that Paul always acted in good faith with respect to the dogs. The hearing justice ordered that Paul "has the dogs Tuesdays through Thursdays as provided in [the MSA]" and awarded attorney's fees to Paul in the amount of $5,248.70. The hearing justice denied Diane's requested relief. Diane filed a notice of appeal.[7]

## II

### Standard of Review

This Court's review of a decision and order from a Family Court justice is deferential. *Ruffel v. Ruffel*, 900 A.2d 1178, 1184 (R.I. 2006). We "will not disturb findings of fact made by a trial justice or magistrate in a divorce action unless he or she has misconceived the relevant evidence or was otherwise clearly wrong." *Bober v. Bober*, 92 A.3d 152, 157 (R.I. 2014) (quoting *Palin v. Palin*, 41 A.3d 248, 253 (R.I. 2012)). "Consequently, unless it is shown that the trial justice either improperly exercised his or her discretion or that there was an abuse thereof, this Court will not disturb the trial justice's findings." *Id.* (quoting *Palin*, 41 A.3d at 253).

## III

### Discussion

Diane argues that the hearing justice was clearly wrong and overlooked material evidence when she found that Paul had acted in good faith because, according to Diane, Paul's effort to keep

---

several findings of fact. The December 28 order was not vacated, therefore both orders remain on the record.

[7] Diane's notice of appeal was filed prior to the entry of the final order resolving the parties' motions. It is well settled, however, that premature notices of appeal are considered timely. *See Lemont v. Estate of Ventura*, 157 A.3d 31, 36 n.7 (R.I. 2017).

Marox away from her on March 29, 2017 constituted a breach of the implied covenant of good faith and fair dealing in the MSA. Diane also argues that the hearing justice was clearly wrong when she concluded that there was no inequity in enforcing the MSA as written because, according to Diane, the evidence showed that the dogs returned to her injured on at least two occasions, proving that Paul failed to properly care for the dogs and to provide safe conditions for them. Diane contends that, because the dogs are chattel, Paul had an obligation to return the dogs to her in an undamaged condition. Because he did not meet this obligation, she asserts, allowing Paul to have the dogs two days a week is inequitable. Diane further argues that, pursuant to *Gorman v. Gorman*, 883 A.2d 732 (R.I. 2005), the hearing justice should have withdrawn the court's approval of the MSA and reformed the MSA.[8] Paul briefly responds that the hearing justice did not either overlook or misconceive any of the testimony she heard or evidence she reviewed.

We begin our analysis by quickly dispensing with Diane's argument that the hearing justice erred by not reforming the MSA. "It is well settled that a property settlement agreement that has been 'incorporated by reference, but not merged into the final divorce decree, retains the characteristics of a contract.'" *Esposito v. Esposito*, 38 A.3d 1, 5 (R.I. 2012) (brackets omitted) (quoting *Zaino v. Zaino*, 818 A.2d 630, 637 (R.I. 2003)). "We also have held that 'for a contract to be subject to judicial reformation, the court must first find a mutual mistake.'" *Id.* (brackets

---

[8] At the end of her prebriefing statement, Diane also briefly mentions that the hearing justice erred by awarding attorney's fees to Paul. This argument is waived for two reasons. First, Diane affirmatively agreed at the hearing that the fees and costs awarded in the amount of $5,248.70 were reasonable and she did not object to the court's order memorializing both the award and her consent thereto. Diane, therefore, failed to preserve this issue for our review. *See Pineda v. Chase Bank USA, N.A.*, 186 A.3d 1054, 1060 (R.I. 2018). If she had properly preserved this issue, however, she waived our review by "simply stating [the] issue [in her prebriefing statement] without a meaningful discussion thereof or legal briefing * * *." *See Terzian v. Lombardi*, 180 A.3d 555, 558 (R.I. 2018) (brackets omitted) (quoting *Horton v. Portsmouth Police Department*, 22 A.3d 1115, 1130 (R.I. 2011)).

omitted) (quoting *Gorman*, 883 A.2d at 740). "A mutual mistake is 'one that is common to both parties wherein each labors under a misconception respecting the *same terms* of the written agreement sought to be reformed.'" *Id.* (brackets omitted) (quoting *Merrimack Mutual Fire Insurance Co. v. Dufault*, 958 A.2d 620, 624 (R.I. 2008)). "When a mutual mistake is manifest in the agreement at the time it is entered into, the agreement fails in a material respect correctly to reflect the understanding of both parties." *Id.* (quoting *Dufault*, 958 A.2d at 624). In the case at bar, the hearing justice appropriately treated the MSA as a contract and the dogs as personal property. She explicitly found that Diane understood the contract and concluded there was no mistake in the contract. Both parties testified that, at the time they entered into the MSA, they intended for Diane to have all rights to the dogs, with weekly visitation for Paul. There is, therefore, no mutual mistake in the MSA's visitation term and no indication that the hearing justice misconceived the evidence when she concluded that the MSA need not be reformed. *See Bober*, 92 A.3d at 157; *Gorman*, 883 A.2d at 740-41.

With respect to Diane's arguments that the MSA is inequitable and that Paul has acted in bad faith, we have previously recognized the Family Court's important role in monitoring property settlement agreements between spouses and ensuring an equitable division of assets. *Gorman*, 883 A.2d at 737. The Family Court has the authority "to review [a] [p]roperty [s]ettlement [a]greement and to withdraw its approval of the [a]greement when it determine[s] that the [a]greement [i]s inequitable." *Id.* at 741 (emphasis omitted). But, "it is not the function of this Court, or the Family Court, to set aside a property settlement agreement simply because a party no longer wishes to be bound by its terms or is unhappy with the result." *O'Donnell v. O'Donnell*, 79 A.3d 815, 822 (R.I. 2013) (brackets and deletion omitted) (quoting *Vanderheiden v. Marandola*, 994 A.2d 74, 78 (R.I. 2010)). Here, the hearing justice found that there is no inequity in enforcing the terms of the MSA

as written and that Paul had not acted in bad faith, stating, "I think it's just a difference of opinion as to the caring of the dogs."  After reviewing the entire record in this case, it is our opinion that the hearing justice's findings and conclusions were well supported by the testimony and evidence before her and that she neither misconceived the evidence nor was clearly wrong in her findings of fact.  Therefore, we hold that it is not inequitable to enforce the visitation term in the MSA as written.[9]

**IV**

**Conclusion**

For the reasons set forth in this opinion, we affirm the order of the Family Court.  The record in this case may be returned to the Family Court.

---

[9] As Paul points out, his victory in this case may be pyrrhic because of Marox's and Winnie's advanced ages.  Some of us are reminded of the remark that: "Dogs' lives are too short. Their only fault, really." Agnes Sligh Turnbull, *The Flowering: A Novel* 69 (Houghton Mifflin Company 1972).

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Diane Giarrusso v. Paul Giarrusso. |
| **Case Number** | No. 2018-53-Appeal.<br>(P 15-1845) |
| **Date Opinion Filed** | April 16, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Family Court |
| **Judicial Officer From Lower Court** | Associate Justice Patricia K. Asquith |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Jesse Nason, Esq.<br>For Defendant:<br><br>John L. Quigley, Jr., Esq. |