December 18, 2019

**Supreme Court**

No. 2018-150-Appeal.
(P 11-236)

Ana Tsonos                    :

v.                    :

Nicholas Tsonos.                    :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Ana Tsonos             :

v.                 :

Nicholas Tsonos.       :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.**  Before the Court are former spouses who dispute the placement of their children, the visitation schedule, and whether the defendant should be subject to a mental health evaluation.  This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.  For the reasons set forth in this opinion, we affirm the order of the Family Court.

**I**

**Facts and Procedural History**

Ana and Nicholas[1] were married on August 3, 2003, and they had three children, Noah, Jeffrey, and Grayson, born in 2004, 2006, and 2010, respectively.  Ana filed for divorce on February 3, 2011, citing irreconcilable differences.  The parties entered into a marital settlement

---

[1] We refer to the parties in this case by their first names for the sake of clarity because they share the same surname.  We intend no disrespect by doing so.  In addition, we refer to the minor children pseudonymously.

agreement on August 16, 2011, and final judgment entered on February 14, 2012, which incorporated, but did not merge, the marital settlement agreement. The agreement provided, among other terms, that the parties share joint custody of their three minor children and assigned physical possession to Ana with visitation for Nicholas.[2]

In 2014, Ana filed a motion for *ex parte* relief seeking to suspend Nicholas's overnight visitation after learning that Nicholas had left the children at his home without supervision. Her motion was granted, and, thereafter, the parties entered into a consent order that reinstated Nicholas's visitation. Over the next few years, the parties filed a bevy of motions, of which the following are relevant to the matter now before the Court: Ana's motion for Nicholas to submit to a psychological evaluation pursuant to Rule 35 of the Family Court Rules of Domestic Relations Procedure; Ana's *ex parte* motion to suspend Nicholas's unsupervised visitation; Ana's motion for the children to discontinue counseling with Laura Ryan, a licensed independent clinical social worker (LICSW) whom the children had seen for therapy; and Nicholas's motions to modify custody and visitation, which were first filed in August 2016.

Hearings on these motions took place over several days between April and December of 2017, during which the trial justice[3] heard testimony from Ana and Nicholas; their three children; Joseph Warzycha, an investigator for the Rhode Island Society for the Prevention of Cruelty to Animals (SPCA); and Laura Ryan. The testimony elicited at the hearings revealed the following events. Ana testified that Grayson, the youngest child, visited Nicholas in mid-December 2016,

---

[2] Nicholas's assigned visitation included three weeknights, overnight visits every other weekend from Saturday morning until Sunday night, and five consecutive days of vacation with the children each year. The agreement also contained specific provisions for holidays and birthdays.

[3] These motions were heard initially by the general magistrate of the Family Court. In September 2017, however, he took the engagement of office as an associate justice of the Family Court. For sake of consistency, we refer to him as the trial justice throughout this opinion.

and, after he returned to her home, he was "hysterical" because Nicholas had left King, a two-and-a-half-year-old German shepherd, outside in the cold. According to Ana, Grayson was "inconsolable[,]" and "he was afraid that his dog was going to die." Ana called the police to have them check on King because she "didn't know what else to do[.]" A few days later, North Providence Animal Control contacted Warzycha to investigate the complaint of an animal having been "left outside during inclement weather without adequate shelter."

Warzycha testified that he contacted Ana the same day and arranged a time to speak with the children that afternoon. According to Warzycha, the children reported that Nicholas had kicked and punched the dog on repeated occasions, left the dog outside in inclement weather without adequate shelter, and had not provided the dog with adequate food and water. Warzycha found that there was insufficient evidence to charge Nicholas with leaving an animal outside during inclement weather, but, after interviewing the children, he found probable cause that Nicholas had physically abused King. He also testified that King exhibited behavior consistent with physical abuse but admitted that he had had no prior interaction with King, so the behavior he observed could have been typical for King.

On December 22, 2016, the North Providence police and the SPCA contacted Nicholas and made arrangements to pick up King. Nicholas's visitation with the children was suspended that same day due to the pending animal cruelty investigation. Nicholas was offered supervised visits at the courthouse while the investigation was pending, but he declined the offer.

On January 12, 2017, Nicholas filed a motion seeking to limit his own visitation with his children, stating that he did not have "the consistent capacity for conventional visitation opportunities" due to the logistics of defending against the allegation of animal abuse, meeting his child support obligations, and "maintaining his employment." The court granted this motion by

4

an order dated February 6, 2017. One month later, Nicholas moved to terminate the temporary suspension, which was granted, and the parties were ordered to resume the visitation schedule established in the marital settlement agreement. Warzycha testified that King was returned to Nicholas that same month.

Shortly thereafter, the children went to Noah's hockey game with Nicholas. After a conversation with Noah the next day, Ana asked her father to go by Nicholas's home and check on King. She then contacted animal control because her father had observed the dog outside in 4-degree weather in the snow. The dog was seized by animal control while Nicholas was at his office in Boston. Nicholas testified that he knew about his children's concerns over his treatment of King at the time of this latter incident because he had read affidavits from Ana and the police reports from the December incident, even though the children had not addressed their concerns about the dog with him directly. After this second incident, Ana filed an *ex parte* motion to modify visitation and a motion for a mental health evaluation of Nicholas under Rule 35. The trial justice granted the *ex parte* motion and suspended Nicholas's visitation effective immediately.

Ana testified that she was concerned for her children because they had witnessed abusive behavior toward a dog that they loved. Ana was worried that the children's awareness of Nicholas's behavior toward the dog was affecting them negatively, but she said she was comfortable with supervised visitation and wanted the children to see their father.

Nicholas's testimony primarily focused on the correctness of his actions with regard to King. He testified at great length about King's health, the adequacy of the outdoor doghouse, and about exactly how long King had been outside on the day of the hockey game. Nicholas further testified that the children never addressed any concerns about the dog to him, and he had no reason to believe the children did not want to talk to him about their concerns. He believed his child's

5

reaction to King was "irrational" and "f[ound] it amazing" that "the 12-year old [got] to decide * * * what adult decisions [Nicholas] make[s] to care for [his] pet."

Nicholas also testified that his children's concerns were influenced by Ana and the "poisonous" atmosphere of living with their mother and maternal grandparents. He questioned whether the children had in fact told Ana about King and suggested that the children had created false memories. Nicholas explained that if he had more access to his children, he could encourage more communication. He contended that the core of their family issues was not his care of King, but Ana being "hypervigilant" and her refusal to talk to him about her concerns.

As part of these hearings, the trial justice interviewed each of the three Tsonos children individually in his chambers on June 13, 2017. Noah, who was almost thirteen years old at the time, stated that he wanted the judge to help his father with his "anger" problem, that Nicholas was "not listening to people[,]" including his own father, and that he (Noah) was a "little bit kind of still scared" around Nicholas and his grandfather because of this. However, he did feel "fine" in court with Nicholas there because there were other people around. He indicated that his father would frequently get very angry and yell at him and his brothers and that his father used to hit them but had "gotten better with that." He also testified that seeing his father at sports practices and games made him nervous because his father could potentially become angry. Despite this history, Noah indicated a desire to see his father, but "maybe not until he gets better"; Noah thought their previous visitation schedule worked well. Regarding King, he told the trial justice that he had seen his father hit and kick the dog and leave him outside. Noah stated that he did not want the dog to go back to his father's house because he did not think that the dog was safe there.

Jeffrey, who was ten years old, stated that he missed his father and would like to visit with his father again, but that he did not like watching King get hurt at Nicholas's house. He said that

6

if he were upset, angry, or uncomfortable, he would have no problem telling his father. Grayson, who was in kindergarten at the time, did not wish to speak to the trial justice regarding his father.

After reading transcripts of what the children had said to the trial justice while in his chambers, Nicholas testified further. Nicholas blamed "immature children and a hypervigilant [mother for] creat[ing] a loss of eight months of [their] lives." Nicholas indicated that he was willing to adjust his behavior only to the extent that it would help Noah "perceive things as they are." He also testified that Noah was dishonest with the trial justice during their conversation in chambers. Finally, Nicholas contended that Noah needed therapy because he thought his judgment was better than his father's and to understand that "[he is] the child and he has parents."

Laura Ryan, the social worker who had worked with the family, also testified and submitted a report. She began counseling the family in the fall of 2014 and had her last session with them in February 2017, prior to the second incident with King and three months before she wrote a report for the court. She testified that the longer children are separated from their parents or exposed to negative information, they "tend to lean towards the negative regarding the parent they're not seeing." In her report, Ryan recommended "50/50 shared placement * * * or at the least a generous visitation schedule" for Nicholas. Ryan testified that Nicholas and the children needed to talk about the King situation "in a therapeutic setting or otherwise" for them "to get back in a good place." In her opinion, the children were "deteriorat[ing] in their emotions" because of the "roller coaster ride" of their schedules being changed and the constant family crisis.

Ryan testified further that the children had discussed their concerns about King with her. Noah told her that if he saw his father mistreating King, he would not say anything because his father would not listen to him. Importantly, Ryan testified that a child's concern over an animal

7

being outside might be irrational if, for example, it was 65 degrees, but that did not mean the child's concern should not be addressed, whether it was "scientifically valid or not[.]"

The trial justice entered an order on March 22, 2018, denying Nicholas's motions to modify visitation and placement; granting, in part, Ana's motion for a Rule 35 mental health examination of Nicholas; and ordering the parties to engage Dr. Marnee Colburn for the purposes of said evaluation as well as for a "parent-child evaluation of [Nicholas] and the minor children." The order contains the following findings:

> "1. The [c]ourt heard testimony in this matter from witnesses including [p]laintiff, [d]efendant, RISPCA Officer Joseph Warzycha, Laura Ryan, LICSW and the minor children.
>
> "2. The [c]ourt finds that [p]laintiff's sole concern in this matter is the well-being of her children.
>
> "3. The [c]ourt finds that [d]efendant has engaged in a course of conduct which demonstrates an indifference to his children's concerns;
>
> "4. That [d]efendant has demonstrated a lack of empathy regarding the impact that his actions toward the family dog have had on his children;
>
> "5. That [d]efendant is 'thumbing his nose' at the concerns of his children and the [p]laintiff.
>
> "6. The [c]ourt further finds that [d]efendant needs to work on understanding how his actions and statements have an impact on his children and how to interact with them in a way that is not adverse."

It is this order from which Nicholas appeals.[4]

---

[4] The order also found Ana's motion to suspend counseling with Ryan moot because the parties were no longer seeing her. Nicholas does not challenge this aspect of the order.

## II

## Standard of Review

This Court "will not disturb findings of fact made by a trial justice or magistrate in a divorce action unless he or she has misconceived the relevant evidence or was otherwise clearly wrong." *Vieira v. Hussein-Vieira*, 150 A.3d 611, 615 (R.I. 2016) (quoting *Palin v. Palin*, 41 A.3d 248, 253 (R.I. 2012)). "Consequently, unless it is shown that the trial justice either improperly exercised his or her discretion or that there was an abuse thereof, this Court will not disturb the trial justice's findings." *Id.* at 615 (quoting *Palin*, 41 A.3d at 253). "Questions of law in an appeal from the Family Court, however, are reviewed *de novo*." *Id.* at 615-16 (quoting *Palin*, 41 A.3d at 253).

## III

## Discussion

Nicholas, representing himself *pro se*, argues before us that the trial justice abused his discretion when he issued the March 22, 2018 order because the justice's findings were not adequately supported by the record, were not tied to empirical evidence, were contradicted by the record, or were ambiguous. Nicholas contends that the children had not been adversely affected by his behavior and that no evidence of an adverse effect was presented during the hearings. He further argues that the trial justice did not support his order to submit to a psychological evaluation with any findings. Finally, Nicholas contends that the trial justice did not address Ryan's recommendation with respect to shared placement of the children.

Ana counters that this appeal is meritless and is "merely a further effort to harass, intimidate and financially abuse" her. She also asserts that Nicholas's prebriefing statement does not present any legal issues for this Court to review and that he is merely attempting to reargue his case.[5]

After thorough review of the record, we are satisfied that the trial justice was not clearly wrong because there is substantial evidence in the record to support his findings. First, the trial justice found that Ana's sole concern was the well-being of her children. Ana testified that she was concerned for her children, who witnessed abusive behavior and a dog that they love being treated "inhumanely." Ana further testified that she does not wish to isolate the children from their father, and she continues to support supervised visitation, as she has through years of litigation. Importantly, Ana's *ex parte* motion only asked to suspend *unsupervised* visitation, not all visitation.

Second, the trial justice made multiple findings regarding Nicholas's apathy towards his children's concerns and found that Nicholas needed to work on understanding how his actions and statements impact the children and learn to interact with them in a way that is not adverse. These findings are also well supported by the record. Even after becoming aware of his children's concerns over leaving King outside, Nicholas admitted that he had not changed the way he cared for King. As the trial justice stated in his bench decision, the point is not whether Nicholas is treating the dog lawfully or unlawfully, it is how the children *perceive* his treatment of King that is at issue.

---

[5] Nicholas also submitted a supplemental memorandum that addresses both this appeal and his appeal from the grant of Ana's Motion to Relocate (No. 2018-304-A). In that memorandum, he reiterates many of his prior arguments and asks the Court to overturn the orders in both appeals, require *de novo* review in Family Court with the "direct intent to reunite" him with his children, order that a clinical or therapeutic resource be engaged to address the children's needs caused by their estrangement from him, and require that a new Family Court justice be assigned to this case.

The order for Nicholas's mental health evaluation and continued suspension of his visitation is likewise well supported by the record. Thus, the trial justice did not abuse his discretion by denying Nicholas's motion to modify visitation and placement and ordering Nicholas's visitation to remain suspended and that Nicholas submit to a mental health evaluation pursuant to Rule 35. Rule 35(a) provides, in relevant part, that:

> "In an action in which the mental or physical condition * * * of a party * * * is in controversy, the court may order the party to submit to a physical or mental or blood examination by a physician * * *. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made."

A decision to order such an examination is committed to the sound discretion of the trial justice. *See In re Christina V.*, 749 A.2d 1105, 1112 (R.I. 2000); Dom. Rel. Proc. R. 35(a).

Specifically, the order is supported by the record given that Nicholas's testimony demonstrates his failure to appreciate that his children's concerns should be addressed. Instead of seeking to understand the children's concerns, he invalidated them repeatedly by questioning whether the children actually told Ana about their concerns and hypothesizing that the children had "false memories." As the trial justice pointed out, these explanations were nonsensical because, when Ana asked her father to check on King, the dog was in fact outside in subfreezing temperature. Nicholas's admission that he had not changed the way he cared for King at all after learning about his children's concerns shows, at best, a misunderstanding of the children's concerns, and, at worst, a complete and total disregard of incidents that clearly caused the children distress.

11

Finally, the trial justice found Noah's statements credible,[6] and those statements regarding King were further supported by Jeffrey. "We accord a substantial amount of deference to * * * credibility determinations, due to the fact that the trial justice has had an opportunity to appraise witness demeanor and to take into account other realities that cannot be grasped from a reading of a cold record." *In re Estate of Ross*, 131 A.3d 158, 167 (R.I. 2016) (brackets and deletion omitted) (quoting *D'Ellena v. Town of East Greenwich*, 21 A.3d 389, 392 (R.I. 2011)). Noah asked the trial justice to help his father with his anger problem and stated that he did not wish to see him until he received treatment for it; however, Jeffrey stated that he did want to see his father. Because it is unlikely that Ana would isolate Noah, but not Jeffrey, from their father, the trial justice concluded that it is unlikely Ana influenced the children to stay away from their father. After careful consideration of the record in this case, we hold that the trial justice did not abuse his discretion by denying Nicholas's motion to modify visitation and placement and ordering Nicholas's visitation to remain suspended and Nicholas to submit to a mental health evaluation pursuant to Rule 35.

## IV

### Conclusion

For the foregoing reasons, we affirm the March 22, 2018 order of the Family Court. The record in this case may be returned to the Family Court.

---

[6] Additionally, during an exchange with Nicholas at a hearing on August 23, 2017, the trial justice noted that he did not find Noah to be immature and that Noah was emotional when talking about his father's anger problem.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Ana Tsonos v. Nicholas Tsonos. |
| **Case Number** | No. 2018-150-Appeal. (P 11-236) |
| **Date Opinion Filed** | December 18, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Family Court |
| **Judicial Officer From Lower Court** | General Magistrate Felix E. Gill |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Tiffinay A. Antoch, Esq.<br>For Defendant:<br><br>Nicholas Tsonos, Pro Se |