**Supreme Court**

No. 2012-52-Appeal.
(N 99-537)

John C. O'Donnell, III          :

v.          :

Anne A. O'Donnell.          :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

John C. O'Donnell, III          :

v.                              :

Anne A. O'Donnell.              :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.**  This case came before the Supreme Court on September 25, 2013, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided.  The plaintiff, John C. O'Donnell, III (John or plaintiff), appeals from a Family Court order directing him to comply with a provision in a divorce settlement agreement that requires him to maintain health insurance for the defendant, Anne A. O'Donnell[1] (Anne or defendant).  After hearing the arguments of counsel and carefully examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal may be decided at this time.  For the reasons elucidated below, we affirm the judgment of the Family Court.

**Facts and Travel**

The parties to this appeal were married on September 6, 1980.  Two children, now adults, were born of the marriage.  On December 15, 1999, plaintiff filed a complaint for divorce based on irreconcilable differences, in response to which defendant filed a similar counterclaim.  The

---

[1] After her divorce from plaintiff, defendant resumed her maiden name and is currently known as Anne Alexandra deBaun Allardt.  However, for the sake of clarity throughout this opinion, the Court will refer to defendant as Anne or defendant and plaintiff as John or plaintiff.  We intend no disrespect.

case was not reached for trial for almost three years; then, on November 12, 2002, the parties indicated that they had reached a settlement. Counsel for plaintiff stated that he was prepared to read the terms of the parties' agreement into the record, but he also requested that the case be continued so that a written property-settlement agreement could be prepared. The Family Court justice presiding over the hearing stated that

> "it is my understanding the parties have in fact settled all of the terms and conditions. I want to continue it to December 6 for the actual divorce to go through for the attorneys in the interim to prepare a written Property Settlement Agreement in which the Court will approve and incorporate, not merge; it will be a separate and independent contract. The outlines of the settlement will be read in the record today and the parties are bound by the outlines of the settlement. They can't come back to court and say, 'Gee, we changed our mind. I thought it over. I don't want to do that.'"

The plaintiff's attorney then proceeded to relate the terms of the parties' agreement. One provision obligated plaintiff to provide health insurance for defendant until she reached the age of sixty-five, with a Medicare supplement thereafter. This provision was somewhat detailed; specifically, plaintiff was required to maintain coverage for defendant under the health and dental insurance plan in effect at the time of their divorce, or provide coverage under an equivalent plan.[2]

After the parties' agreement was read into the record, the Family Court justice asked both parties whether they had been afforded a sufficient opportunity to reflect on the terms, whether they were entering into the agreement voluntarily, and whether they understood that they would be bound by those terms. Both parties—who were seated with their lawyers—answered affirmatively to each question posed by the Family Court justice. The case was then continued

---

[2] Counsel for plaintiff clarified that this obligation would cease if defendant were to receive health insurance from an employer at no cost. Alternatively, if defendant were to be offered comparable health insurance coverage from an employer at a reduced cost, plaintiff could instead provide the copay if it was less expensive than directly providing defendant with health insurance through his existing plan.

to allow the attorneys to prepare a written agreement, which was to be incorporated but not merged into the final divorce decree.

At the scheduled hearing date on December 6, 2002, however, a written agreement had not been consummated.[3] Instead, plaintiff's attorney presented the transcript of the November 12, 2002 hearing as an exhibit evidencing the terms of the parties' agreement. He asked that it be marked as a joint exhibit, and defendant's attorney concurred.

Counsel for plaintiff then proceeded to question his client about the terms of the agreement that had been read into the record at the November 12, 2002 hearing. Specifically regarding health insurance coverage, plaintiff affirmed his understanding that he "will provide [his] current Blue Cross Dental II or equivalent for [his] wife until age 65, and after age 65, Medicare supplement[.]" The plaintiff also acknowledged his obligation to pay any copay expenses in the event defendant was offered health insurance by an employer at a reduced cost. When asked whether he had read the transcript that was entered as a joint exhibit, plaintiff stated, "many times." The plaintiff's attorney then asked whether plaintiff understood the terms of the agreement and if he "agreed it will become a binding agreement between you and your wife," to which he answered, "yes, I do." On cross-examination, defendant similarly stated that the terms of the agreement had been fully explained to her and that she agreed with those terms.

Having the benefit of the parties' testimony, the Family Court justice determined that the parties had settled all outstanding issues between them by means of the agreement that had been read into the record by plaintiff's counsel at the November 12, 2002 hearing. The trial justice approved the marital settlement agreement, noting that it was presented as a joint exhibit in the form of a transcript, and ordered it incorporated but not merged into the final divorce decree. A

---

[3] At the time of the hearing, no explanation was provided for this lapse.

- 3 -

decision pending entry of final judgment was entered on December 17, 2002, which reiterated the trial justice's findings of fact that both parties had accepted the agreement that was read into the record at an earlier hearing and presented to the court as a joint exhibit in the form of a transcript. The decision also specified that the agreement was to remain a separate and independent contract between the parties and was to be incorporated by reference but not merged into the final decree of divorce. The final judgment of divorce, which entered on June 5, 2003, also refers to the parties' marital settlement agreement, and provides that it was incorporated by reference but not merged into the judgment, and is to remain a separate and independent contract between the parties.

On June 21, 2011, defendant filed a motion to enforce the provisions of the parties' agreement respecting plaintiff's obligation to pay for health insurance.[4] The defendant claimed that she had received a certified letter from plaintiff stating that, as of July 1, 2011, he would no longer provide defendant with medical insurance because he had remarried and was enrolling his new spouse in his health insurance plan. By way of answer, plaintiff challenged the validity of the marital settlement agreement, claiming that the mere reading of an agreement's outline on the

---

[4] The defendant's motion was styled as a "complaint after entry of final judgment to enforce." The plaintiff's response to defendant's motion was entitled "answer to complaint/motion for summary judgment and other affirmative relief." On July 28, 2011, defendant replied by filing a "memorandum in support of defendant's motion for continuing health coverage, in reply to plaintiff's motion for summary judgment and in support of her cross motion for summary judgment." The defendant then filed a "motion for relief" on August 24, 2011, which was then followed by "plaintiff's memorandum in support of his defense against defendant's complaint to enforce and her subsequent motion for relief, and in further support of his answer and motion for summary judgment and other affirmative relief." On October 21, 2011, defendant filed another document entitled, "reply memorandum of defendant Anne Alexandra deBraun to plaintiff's memorandum in support of his defense against defendant's complaint to enforce, etc." During the time the parties filed these competing memoranda the case had been continued numerous times. However, when the case finally came before the Family Court on November 4, 2011, the justice treated the motion as defendant's motion to enforce, and plaintiff's objection thereto, and not a motion for summary judgment.

record, without a written agreement having been executed by the parties that was incorporated but not merged into the final divorce decree, was not binding. Significantly, plaintiff did not move to vacate or amend the agreement nor did he seek any other relief. In essence, plaintiff alleged that because the parties failed to execute a written settlement agreement, there was no real meeting of the minds between the parties. Finally, plaintiff cited L'Heureux v. L'Heureux, 770 A.2d 854 (R.I. 2001), for the proposition that the Insurance Continuation Act, found in G.L. 1956 chapter 20.4 of title 27, required plaintiff to stop providing health insurance to his former spouse once he remarried.[5]

At the hearing on defendant's motion, the parties rested on their respective memoranda. The Family Court justice issued a bench decision, finding that the parties had stipulated that the November 12, 2002 hearing transcript that was submitted as a joint exhibit was the written agreement. She determined that at the time of the nominal hearing on December 6, 2002, the parties intended that the transcript would serve as the marital settlement agreement. The Family Court justice also found that there was "no mention anywhere" of the Rhode Island Insurance Continuation Act and that it was clear that the "intent and the clear agreement between the parties was that [plaintiff] was to continue to cover [defendant] with her health insurance except for those conditions of her getting employment that allowed health insurance."

An order reflecting the bench decision was entered on January 6, 2012. That order specifically stated that the L'Heureux case did not apply because there was a property settlement agreement, and "the clear intent of the parties was that [husband] would be responsible for providing [wife] with health insurance, subject to the other provisions or conditions in the

---

[5] The plaintiff does not raise this argument on appeal to this Court. Accordingly, based on this failure to raise and our conclusion that a contract exists between the parties which was incorporated but not merged into the final divorce decree, we need not analyze this argument.

agreement." The order required plaintiff "to comply with the terms of the agreement and to obtain and maintain the health insurance pursuant to the parties' agreement." The plaintiff filed a timely appeal.[6]

## Standard of Review

It is well settled that this Court "will not disturb findings of fact made by a trial justice or magistrate in a divorce action unless he or she has misconceived the relevant evidence or was otherwise clearly wrong." Palin v. Palin, 41 A.3d 248, 253 (R.I. 2012) (quoting Cardinale v. Cardinale, 889 A.2d 210, 217 (R.I. 2006)). Thus, "unless it is shown that the trial justice either improperly exercised his or her discretion or that there was an abuse thereof, this Court will not disturb the trial justice's findings." Id. (quoting Cardinale, 889 A.2d at 217-18). However, this Court reviews all questions of law presented in an appeal from the Family Court de novo. Zharkova v. Gaudreau, 45 A.3d 1282, 1290 (R.I. 2012) (citing Curry v. Curry, 987 A.2d 233, 238 (R.I. 2010)).

## Discussion

On appeal, plaintiff claims that the parties never truly reached an agreement.[7] The plaintiff contends that there was no meeting of the minds between the parties and that, if an agreement had in fact been reached, additional provisions would have been included within its terms.[8] The plaintiff argues that the agreement to which defendant points was not a writing

---

[6] The plaintiff also filed a petition for certiorari seeking review of the order; however, that petition was denied on the grounds that the Family Court order was properly appealable.

[7] We note that plaintiff's current counsel is not the same attorney who represented plaintiff in the original divorce action.

[8] For example, plaintiff contends that the provisions regarding health insurance and alimony would have been made modifiable, and that consequences relating to the death of either party would have been included.

signed by the parties and that it is therefore nothing more than stenographic notes. As a result, plaintiff maintains that a stenographic record of an oral agreement reached in open court is not sufficient to form a nonmodifiable marital settlement agreement. The plaintiff's arguments are without merit.

It is well settled that in order to form an enforceable agreement, "[e]ach party must have and manifest an objective intent to be bound by the agreement." Opella v. Opella, 896 A.2d 714, 720 (R.I. 2006) (citing Weaver v. American Power Conversion Corp., 863 A.2d 193, 198 (R.I. 2004)); Rhode Island Five v. Medical Associates of Bristol County, Inc., 668 A.2d 1250, 1253 (R.I. 1996). Thus, "a litigant must prove mutual assent or a 'meeting of the minds between the parties.'" Opella, 896 A.2d at 720 (quoting Mills v. Rhode Island Hospital, 828 A.2d 526, 528 (R.I. 2003) (mem.)).

In the present case, the Family Court justice found that the parties intended and agreed that plaintiff was to provide health insurance coverage to defendant, with only limited exceptions concerning employer-provided health insurance. The Family Court justice reached this conclusion after reviewing the transcript from the November 12, 2002 hearing, where plaintiff's counsel—without objection—read this provision into the record. The Family Court justice noted that, after plaintiff's attorney submitted that transcript as a joint exhibit at the December 6, 2002 hearing, both plaintiff and defendant testified under oath and confirmed their assent to its terms. At no time did either party object or voice any disagreement with the health insurance coverage provisions. Accordingly, the parties are bound by the agreement which they affirmed in open court.

The plaintiff also contends that, because the agreement was neither drafted nor signed by the parties, it is nothing more than stenographic notes and not a binding agreement. The plaintiff

suggests that a stenographic record of a judicial proceeding cannot form the basis of a nonmodifiable marital settlement agreement. We reject this contention.

In pertinent part, Rule 1.4 of the Family Court Rules of Practice, entitled "Agreements," provides that "[a]ll agreements of parties or attorneys touching the business of the court shall be in writing, unless orally made or assented to by them in the presence of the court when disposing of such business, or they will be considered of no validity." (Emphasis added.)

In Ruffel v. Ruffel, 900 A.2d 1178 (R.I. 2006), this Court—as a matter of first impression—likened Rule 1.4 of the Family Court Rules of Practice to its "identical" counterpart, Rule 1.4 of the Superior Court Rules of Practice. Ruffel, 900 A.2d at 1185. In Ruffel, we held that although parties to a divorce may enter into an agreement to change the valuation date for equitable distribution, in order to comply with Rule 1.4, that agreement must be evidenced by a writing or placed on the record. Ruffel, 900 A.2d at 1186. In so holding, this Court cited to prior decisions declaring that the only way parties may preserve an agreement within the rules of practice is to place that agreement on the record "in the presence of the court," or reduce it to an agreed-upon writing. See id. at 1185 (citing E.W.H. & Associates v. Swift, 618 A.2d 1287, 1288-89 (R.I. 1993) (holding unenforceable an alleged oral settlement agreement that was not in writing or placed on the record); DiLuglio v. Providence Auto Body, Inc., 755 A.2d 757, 776-77 (R.I. 2000) (declining to uphold an alleged bifurcation agreement that was not in writing nor placed on the record); Melucci v. Berthod, 687 A.2d 878, 879 (R.I. 1997) (purported settlement agreement not placed on the record or reduced to writing held unenforceable)). These holdings comport with this Court's reasoning that "[r]equiring stipulated agreements either to be placed on the record or to be reduced to an agreed-upon writing ensures that the agreement itself does not become a source of further controversy and litigation." Ruffel, 900 A.2d at 1185

- 8 -

(quoting Swift, 618 A.2d at 1288-89). On the other hand, a stipulation of counsel, whether in writing or made in open court, "is conclusive upon the parties and removes the issue from the controversy." In re McBurney Law Services, Inc., 798 A.2d 877, 881-82 (R.I. 2002).

Here, plaintiff's efforts to be relieved of the terms of the agreement that was set forth on the record and later introduced as an exhibit are wholly without merit. It is undisputed that plaintiff's attorney recited the terms of the parties' agreement to the Family Court justice in open court. Each party then assented to those terms. At the later nominal hearing, the transcript was admitted as a written exhibit, evidencing the parties' agreement. Each party testified, and once again declared their assent to the terms set forth in the transcript, without objection. Accordingly, plaintiff's argument that the parties' agreement is unenforceable because it was not drafted and signed by the parties is rejected.

Moreover, the claim that plaintiff would have included many more provisions if an agreement had actually been reached similarly is unavailing. Whatever reason the parties failed to execute a separate settlement agreement before the nominal hearing is of no moment. The trial justice noted that the parties had drafted several revisions, but that no written agreement was ever executed by the parties.[9] However, she determined that at the time of the nominal hearing on December 6, 2002, the parties intended that the transcript of the agreement made in open court would serve as the settlement agreement. We refuse to disturb this finding.

We also reject plaintiff's claim that the stenographic record of an agreement reached in open court does not rise to the level of a nonmodifiable marital settlement agreement. This Court is cognizant that contractual agreements between spouses are entitled to special judicial

---

[9] Notably, each draft of the proposed written settlement agreement—submitted to this Court by plaintiff's attorney—contained the same, unchanged provisions regarding plaintiff's obligation to provide health insurance coverage to defendant, analogous to those read into the record at the November 12, 2002 hearing by plaintiff's attorney.

attention based on equitable concerns arising from the marital relationship. Gorman v. Gorman, 883 A.2d 732, 737 (R.I. 2005). However, the record establishes that the parties freely entered into and agreed to be bound by the terms that were submitted on the record in open court. We do not overlook the fact that it was plaintiff who offered the transcript as written evidence of the parties' stipulated agreement and who then testified that he understood fully that he would be bound by that agreement. He may not retreat from that agreement simply by entering into a new marriage.

The Family Court justice who presided over the divorce proceedings specified—without objection—that the terms of the parties' agreement would be incorporated but not merged into the final divorce decree. This provision was then included in both the decision pending entry of final divorce and the final judgment of divorce. The record reflects that the parties intended for the terms of their agreement, embodied in the transcript, to remain a separate and binding contract. As such, it is well settled that "a marital settlement agreement * * * that has been 'incorporated by reference, but not merged into the final divorce decree, retain[s] the characteristics of a contract.'" Hazard v. Hazard, 45 A.3d 545, 550 (R.I. 2012) (quoting Zaino v. Zaino, 818 A.2d 630, 637 (R.I. 2003)); see also Esposito v. Esposito, 38 A.3d 1, 5 (R.I. 2012); Paul v. Paul, 986 A.2d 989, 995 (R.I. 2010); Riffenburg v. Riffenburg, 585 A.2d 627, 630 (R.I. 1991). Accordingly, "[i]t is not the function of this Court, or the Family Court, to set aside a property settlement agreement * * * simply because a party no longer wishes to be bound by its terms or is unhappy with the result." Vanderheiden v. Marandola, 994 A.2d 74, 78 (R.I. 2010).

## Conclusion

For the reasons set forth in this opinion, we affirm the order of the Family Court. The record in this case may be returned to the Family Court.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**        John C. O'Donnell, III v. Anne A. O'Donnell.

**CASE NO:**        No. 2012-52-Appeal.
(N 99-537)

**COURT:**        Supreme Court

**DATE OPINION FILED:**  November 18, 2013

**JUSTICES:**        Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**        Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**    Newport County Family Court

**JUDGE FROM LOWER COURT**:

Associate Justice Karen Lynch Bernard

**ATTORNEYS ON APPEAL:**

For Plaintiff:   Allen M. Kirshenbaum, Esq.

For Defendant:  Robert S. Parker, Esq.