John RIEDEMAN

v.

Wendie PETRELLA.

No. 2002–390–Appeal.

Supreme Court of Rhode Island.

July 2, 2003.

Steven Robinson, Providence.

Sheri Lepore Blanchard.

---

## AMENDED ORDER

This case came before the Supreme Court on May 6, 2003, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and reviewing the memoranda of the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time. The defendant, Wendie Petrella (Petrella or defendant), appeals from a Family Court judgment awarding custody of her daughter to the plaintiff, John Riedeman (Riedeman or plaintiff), the child's biological father. We deny and dismiss her appeal.

The evidence discloses that although they never married, the parties lived together for a period of time and produced a daughter, Gianna, who was born on June 28, 1998. The relationship between the parties deteriorated significantly upon plaintiff's discovery of a crack cocaine pipe hidden in the laundry chute of their home. Subsequent investigation revealed that defendant had left Gianna unattended both in her car and at home, and with her alcoholic mother.

The plaintiff obtained an ex-parte custody order granting him temporary custody of Gianna, suspending defendant's visitation rights and restraining her from entering the parties' former domicile. The defendant subsequently tested positive for cocaine in a test performed by the Family Court Investigative Unit.[1] Subsequent tests proved negative and supervised visitation was permitted, first, at defendant's brother's home and later at the home of Patricia Riedeman, plaintiff's sister who agreed to supervise the visits. The defendant obtained counsel and filed a motion in Family Court seeking joint custody and physical placement of the child. Riedeman objected and sought permanent custody of Gianna.

During the custody hearing, plaintiff related several events that ultimately culminated in this custody proceeding. In addition to discovering the crack cocaine pipe, plaintiff stated that he observed defendant leave the child alone in her car while she was parked at Dunkin' Donuts. On two other occasions, plaintiff testified that he arrived home from work late at night and discovered that Gianna had been left alone. The plaintiff further testified that defendant took prescribed medication, including sedatives and pain killers, and he expressed his concern about her drug use. Finally, he testified that defendant's mother had a drinking problem and he did not approve of her caring for the child. However, while at work on April 11, 2001, he received a call from defendant's mother who appeared to have been drinking; he immediately left work to retrieve the child and found her grandmother speaking with slurred speech. Another witness testified that defendant had left the child unattended in a bathtub.

The defendant took the witness stand, denied these accusations and attempted to explain her dubious behavior and drug history. She testified that she left the child in the care of her next-door neighbor while she went across the street to obtain medicine. Petrella also claimed that the second time she left the child alone, Gianna was standing in the doorway while she was in the front yard. Although she admitted leaving her daughter unattended in her automobile several times, she insisted that she was able to monitor Gianna from her

1. Later that day, Petrella sought a drug screen through Roger Williams Medical Center; she alleges that this drug screen did not test positive for cocaine. However, most recently, Petrella's drug test revealed the presence of opiates.

location. Petrella admitted to using cocaine and prescription drugs and acknowledged that she had entertained suicidal thoughts as a consequence of losing custody of Gianna. She further testified that she had considered "going to get help."

The trial justice issued a bench decision and awarded permanent custody of Gianna to Riedeman. Relying upon the factors established in *Pettinato v. Pettinato*, 582 A.2d 909, 913–14 (R.I.1990), she noted that repeatedly leaving the child unattended was unacceptable conduct on the part of defendant. Although she declined to find that defendant had a drug problem, she found credible the testimony of other witnesses that Petrella had admitted that she needed help. The trial justice also found that plaintiff's dependence on Xanax and other prescription medications did not reflect a lifestyle worthy of custody of her daughter. She concluded that Riedeman was the more stable parent, and that an award of custody to Petrella was not in the child's best interest. She awarded sole custody of Gianna to Riedeman and granted Petrella "reasonable and frequent supervised rights of visitation" pending her ability to "get help."

On appeal, Petrella challenges that part of the trial justice's decision mandating supervised visitation. First, she argues that the trial justice erred in ordering supervised visitation without a finding that Gianna was at risk of harm from unsupervised visits. Further, defendant contends that the trial justice failed to specify the type of "help" defendant should obtain in order to gain unsupervised visitation with her daughter. Finally, defendant argues that the order entered by the trial justice did not comport with the language of the bench decision granting "frequent" visitation.

The plaintiff responds that the trial justice was faced with abundant evidence to find, in light of Petrella's questionable parenting skills, her neglect of Gianna's safety and admitted drug use, that the child's best interests dictate that custody remain with her father. Additionally, because of her finding that Petrella needed professional help, supervised visitation was also a proper exercise of discretion. Finally, Riedeman claims that the omission of the word "frequent" in the order does not materially affect Petrella's visitation rights. We agree with these contentions.

"[T]he paramount consideration in cases involving visitation rights or custody disputes is the best interests of the child[.]" *Pacheco v. Bedford*, 787 A.2d 1210, 1213 (R.I.2002) (quoting *Burrows v. Brady*, 605 A.2d 1312, 1315 (R.I.1992)). "If the Family Court has properly considered what custody arrangements are in the best interests of the child, [this Court] will not disturb such a discretionary decision." *Id.* (quoting *Suddes v. Spinelli*, 703 A.2d 605, 607 (R.I.1997)). Further, we have held that "[w]hether the visitation should proceed beyond the point of supervised visitation is a matter left entirely to the discretion of the trial justice." *Africano v. Castelli*, 740 A.2d 1251, 1254 (R.I.1999).

We are satisfied that the trial justice properly assessed the best interests of the child according to the factors set forth in *Pettinato* and determined that Riedeman was the more stable parent. The record discloses that Petrella's mental health, moral fitness, and overall stability were questionable; her careless and cavalier approach to childrearing and her admitted drug use regularly placed her daughter in jeopardy. Further, an order of supervised visitation is not dependant upon a finding that the child is at risk from unsupervised visits, nor was the trial justice required to specify in detail the type of "help" that Petrella should receive before the visitation order may be amended. The burden

is on defendant to straighten out and demonstrate an ability to properly and safely parent her child. The Family Court is not required to render advice to litigants nor is it a social · service agency. We conclude that the trial justice exercised sound discretion in awarding custody to the plaintiff and ordering supervised visitation for the defendant and we shall not disturb her findings.

Accordingly, the defendant's appeal is denied and dismissed and the papers in this case may be remanded to the Family Court.

Justice FLAHERTY did not participate.