**Supreme Court**

No. 2015-329-Appeal.
(13-2045)

Michael Vieira              :

        v.                    :

Amy Hussein-Vieira.        :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Michael Vieira           :

v.               :

Amy Hussein-Vieira.      :

Present: Suttell, C.J., Goldberg, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** The plaintiff, Michael Vieira, appeals from a Family Court final decree granting both his complaint for divorce and Amy Hussein-Vieira's (defendant) counterclaim for divorce on the grounds of irreconcilable differences. In addition to dissolving the parties' marriage, the decree awarded them joint custody of their two minor children, granted the defendant physical placement of both children, ordered the plaintiff to pay child support, and partitioned the marital assets. On appeal, the plaintiff takes issue with various aspects of the trial justice's decision. This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the decree of the Family Court in part and vacate in part.

# I

## Facts and Procedural History

The parties were married on October 13, 2006; they have two children, ages eight and five at the time of trial. Although both parties worked throughout the marriage, plaintiff was the primary breadwinner in the family. During the course of the marriage, they acquired two parcels of real estate. Initially, they purchased a two-unit dwelling on Waterman Avenue in Johnston (the Johnston property) as an investment. Subsequently, they purchased and resided at a second property on Matteo Drive in North Providence (the North Providence property), which was in foreclosure at the time of trial.

In 2010, the couple began having marital problems. The relationship gradually worsened and on August 14, 2013, defendant obtained a restraining order against plaintiff.

The couple separated and plaintiff filed for divorce on August 28, 2013, citing irreconcilable differences. In his complaint, plaintiff requested physical placement of the children with joint custody, child support, and equitable distribution of the marital assets. The defendant counterclaimed for sole custody of the children, alimony, child support, and equitable distribution of the marital assets. Preliminarily, a temporary order was issued granting plaintiff supervised visitation with his children on Tuesday and Thursday evenings and Sundays from 10 a.m. to 7 p.m. In addition, plaintiff was ordered to continue paying the mortgage, insurance, and taxes on both the North Providence and Johnston properties, and defendant was allowed to collect the rent from the second-floor unit of the Johnston property "for child support purposes."

From the outset, the parties have had a contentious divorce. In October 2013, plaintiff sought to adjudge defendant in contempt for allegedly entering his apartment at the Johnston property in violation of a restraining order. Subsequently, plaintiff was arrested for violating a

restraining order after defendant alleged he called her cell phone over fifty times. On another occasion, plaintiff was again arrested for allegedly violating a restraining order when he wrote defendant's father a letter. The plaintiff pled nolo contendere to the violations and was briefly incarcerated on both occasions, resulting in the termination of his employment. On September 3, 2014, the parties stipulated to unsupervised visitation on Wednesdays from 5 p.m. to 7 p.m. and Sundays from 1 p.m. to 4 p.m., with pickups and drop-offs to be at the North Providence police department.

A trial in the Family Court commenced on December 5, 2014. In his testimony, plaintiff averred that he had been unable to find work to comply with the temporary order because his criminal convictions for violating the restraining order prevented him from passing a background check; thus, he was forced to start his own business, in which he earned about $1,200 a month. The plaintiff acknowledged that he did not see his children for a period of 287 days because he "felt [he] didn't need" the supervision. The defendant testified that she was employed throughout the marriage except when she gave birth to the children, and that she had acquired $50,350 of debt as a result of the marriage.[1]

On May 19, 2015, the trial justice filed a written decision. The trial justice found that plaintiff's trial testimony was "convenient, incredulous at times, and for the most part, unworthy of belief." The trial justice further found that plaintiff's explanation or lack of knowledge of the marital debt was "absolutely incredulous." The trial justice also noted that "[p]laintiff's actions exhibited conduct of concern to the [c]ourt and may provide an obstacle to him to facilitate a relationship between the parties in the future." The defendant's testimony, however, was found to be credible.

---

[1] The defendant testified that this debt of "almost $50,000" was a result of repairs to the Johnston property after a fire destroyed part of the house.

The trial justice found that plaintiff had, on several occasions, violated the temporary order. For instance, he found that plaintiff failed to pay the bills on both the Johnston and North Providence properties, causing defendant to utilize the rents to pay the mortgage. In addition, the trial justice found that plaintiff, during the pendency of the divorce, withdrew more than $7,000 from his ADP[2] account and Tiffany & Co. pension account, and that he had no "reasonable explanation" as to the whereabouts of this money when examined at trial.

In addition, the trial justice found that joint custody was in the best interest of the children but awarded physical possession to defendant. Specifically, the trial justice found that "[d]efendant presented evidence that the children [were] doing quite well in their current environment and ha[d] adjusted and that they are involved. On the other hand, [p]laintiff ha[d] provided no evidence as to any stability other than the fact that he is currently living with his girlfriend in a one bedroom apartment." At the time the written decision was issued, the then-current visitation schedule was continued until such time as the trial justice would have an opportunity to evaluate "any and all" reports from the therapists treating the children. The transfers of the children were to take place at the home of defendant's mother.

The trial justice further determined that plaintiff had the ability to earn at least $30,000, and he ordered plaintiff to pay defendant $646 monthly for the support of the children, plus $125 per month towards medical insurance. Furthermore, the trial justice found that plaintiff had "dissipated marital assets during the pendency of this divorce case in the amount of approximately $7,000," and ordered him to transfer one-half of the remaining balance in his retirement accounts to defendant. The defendant was awarded "any and all retirement benefits

---

[2] ADP is a human resources management services company. See ADP, Who We Are, https://www.adp.com/who-we-are.aspx (last visited Nov. 16, 2016). The plaintiff's ADP account is a type of flexible spending account for dependent care that is administered by ADP.

from her recent * * * or previous employment" free of any claim from plaintiff, in the event she was entitled to any. The trial justice's decision was again memorialized in a decision pending entry of final judgment, which summarized the findings made in his decision. Final judgment entered on September 15, 2015.

The plaintiff filed a timely notice of appeal to this Court. On appeal, plaintiff contends that the trial justice's visitation, child-support, and distribution of marital property findings were incorrect and not supported by evidence or law.

## II

### Standard of Review

We "will not disturb findings of fact made by a trial justice or magistrate in a divorce action unless he or she has misconceived the relevant evidence or was otherwise clearly wrong." Palin v. Palin, 41 A.3d 248, 253 (R.I. 2012) (quoting Cardinale v. Cardinale, 889 A.2d 210, 217 (R.I. 2006)). "Consequently, 'unless it is shown that the trial justice either improperly exercised his or her discretion or that there was an abuse thereof, this Court will not disturb the trial justice's findings.'" Id. (quoting Cardinale, 889 A.2d at 217-18). "Questions of law in an appeal from the Family Court, however, are reviewed de novo." Id.

## III

### Discussion

### A

### Custody and Visitation

On appeal, plaintiff first contends that the trial justice erred by failing to modify the then-existing visitation schedule with the minor children. The crux of plaintiff's argument is that the trial justice abused his discretion by discrediting plaintiff's testimony and giving undue weight to

defendant's testimony. According to plaintiff, he "has consistently sought to maximize parenting time with his two children[,]" and he enjoys a "very good" relationship with his children.

"This Court will not disturb findings of fact made by the Family Court on the issue of custody and the best interests of the child unless the trial justice abused her discretion in making a particular award." McDonough v. McDonough, 962 A.2d 47, 52 (R.I. 2009). "An award will be affirmed unless the trial justice's factual findings overlooked or misconceived material evidence or were clearly wrong." Id. "We have recognized that '[i]t is the trial justice who is in the best position to determine what factors may be relevant on a case-by-case basis, and his or her discretion in this regard should not be unduly constrained.'" Id. (quoting Dupré v. Dupré, 857 A.2d 242, 257 (R.I. 2004)).

"[T]he paramount consideration in cases involving visitation rights or custody disputes is the best interests of the child." Chiappone v. Chiappone, 984 A.2d 32, 38 (R.I. 2009) (quoting Riedeman v. Petrella, 828 A.2d 538, 540 (R.I. 2003)). "If the Family Court has properly considered what custody arrangements are in the best interests of the child, [this Court] will not disturb such a discretionary decision." Id. (quoting Riedeman, 828 A.2d at 540).

The factors for determining the "best interests of the child" are set forth in Pettinato v. Pettinato, 582 A.2d 909 (R.I. 1990):

> "1. The wishes of the child's parent or parents regarding the child's custody.
> "2. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.[ ]
> "3. The interaction and interrelationship of the child with the child's parent or parents, the child's siblings, and any other person who may significantly affect the child's best interest.
> "4. The child's adjustment to the child's home, school, and community.
> "5. The mental and physical health of all individuals involved.[ ]
> "6. The stability of the child's home environment.[ ]

"7. The moral fitness of the child's parents.[ ]

"8. The willingness and ability of each parent to facilitate a close and continuous parent-child relationship between the child and the other parent.[ ]" Id. at 913-14.

In his written decision, the trial justice summarized the testimony presented before the Family Court, and he provided substantial findings regarding the life situation and circumstances of both the parents and the children. The trial justice found that "[p]laintiff did not visit with the minor children for a period of 287 days" during the pendency of the divorce, "although he had been offered visitation during that period, which he refused, without explanation."[3] The trial justice further found that plaintiff had been offered additional visits by defendant approximately two months before trial, but that he had refused, and that the children had "consistently lived with * * * [d]efendant since the separation of the parties and that * * * [p]laintiff ha[d] paid little, if any, child support during the same time frame." Moreover, the trial justice carefully enumerated and analyzed each factor concerning the best interests of the children set forth in Pettinato, 582 A.2d at 913-14.

In light of the deference that we afford to a trial justice in assessing the best interests of children, we are satisfied that the trial justice in this case acted well within his discretionary authority. He considered the evidence concerning such factors as the children's home environment, adjustment to their community, defendant's mental health, and the willingness of each parent to facilitate a close relationship between the children and the other parent. Significantly, the trial justice's decision provided for the further review of "any and all prior or recent reports from therapists involving the minor children" as it pertains to visitation. It is clear,

---

[3] The trial justice also noted that, during this time, plaintiff never once attempted to contact the children.

therefore, that the trial justice intended to fashion a visitation schedule in accordance with the continuing best interests of the children. We perceive no error in his ruling.

**B**

**Child Support**

Next, plaintiff maintains that the trial justice erred in ordering him to pay child support in the amount of $646 per month plus $125 for medical insurance for the minor children. The plaintiff argues "that the [t]rial [j]ustice gave improper and undue weight to his testimony" regarding his previous employment and earning ability, as the evidence "clearly established that he no longer makes [and can no longer earn] $30,000 per year." Although acknowledging that he at one time earned as much as $60,000 per year as a maintenance worker, plaintiff contends that, due to the numerous complaints for restraining orders filed by defendant and "his subsequent unjust imprisonment," he is unable to pass a background check and thus is unable to find employment as a maintenance worker. The plaintiff claims that he "credibly testified" that at the time of trial he was earning an average of $1,200 per month doing construction and handyman jobs.

It is well recognized that an absent parent's ability to pay a child-support order "does not rest solely on his or her present earning capacity." Sullivan v. Sullivan, 460 A.2d 1248, 1250 (R.I. 1983). "It 'includes other available means of compliance, as well as [the] capacity to acquire these means by the exercise of reasonable efforts.'" Id. (quoting Brierley v. Brierley, 431 A.2d 410, 415 (R.I. 1981)). In the case on appeal, the trial justice stated that he based his finding that plaintiff had an ability to earn at least $30,000 per year upon plaintiff's prior job experiences. We also note that the trial justice found plaintiff's testimony and his memory "to be convenient, incredulous at times, and for the most part unworthy of belief." Specifically, the

- 8 -

trial justice found that, after plaintiff's dismissal from Tiffany & Co., he never applied for a lesser-paying job, and that he had leased a new 2014 Toyota truck with a monthly payment of approximately $440 subsequent to the separation of the parties. Accordingly, we conclude that the trial justice's finding concerning plaintiff's earning capacity was a sustainable exercise of his discretionary authority.

The plaintiff also contends that the trial justice erred by not considering the child-support guidelines in establishing the child-support order because an appropriate worksheet was not filed during the divorce proceedings. "General Laws 1956 § 15-5-16.2(a) provides that the Family Court 'shall order either or both parents owing a duty of support to a child to pay an amount based upon a formula and guidelines adopted by an administrative order of the [F]amily [C]ourt.'" Waters v. Magee, 877 A.2d 658, 665 (R.I. 2005) (quoting § 15-5-16.2(a)). Moreover, "[w]e consistently have held that § 15-5-16.2, in conjunction with the support guidelines, requires the trial justice to review the worksheet to determine the base level of child support that the noncustodial parent is required to pay." Cardinale, 889 A.2d at 221. A trial justice may then deviate from the worksheet guidelines "[o]nly if [he or she] finds that the recommended child support order would be inequitable to the child or to either parent * * *." Id. "This Court will not disturb such a determination on review absent a clear abuse of discretion." Hogan v. Hogan, 822 A.2d 925, 927 (R.I. 2003).

Here, the trial justice predicated the child-support order upon plaintiff's earning capacity of $30,000 per year and defendant's current earnings of approximately $520 per week. It does not appear, however, from either his decision or the record, that he considered the child-support guidelines in accordance with the dictates of § 15-5-16.2 and the Family Court administrative order. The record is devoid of any child-support guidelines worksheet, as is required. In a

similar situation, we have held that it is necessary "to remand the matter to the Family Court to consider the information contained in the parties' completed worksheet submitted pursuant to the Family Court's administrative order." Lembo v. Lembo, 677 A.2d 414, 419 (R.I. 1996). In that case, the trial justice referenced the child-support guidelines in his bench decision, but it was unclear whether he utilized a child-support guidelines worksheet when determining the amount of child support. Consequently, we consider it necessary to remand the case to the Family Court for a determination of an appropriate order of child support pursuant to the Family Court administrative order.

## C

### Equitable Assignment of Property

Finally, plaintiff contends that the distribution of property was erroneous because the trial justice erred in: (1) granting defendant 100 percent of her pension; (2) finding that he dissipated $7,000 of marital assets; (3) awarding defendant exclusive possession of the Johnston property; and (4) calculating the joint marital debt.

"The equitable distribution of marital assets is [also] within the discretion of the trial justice." Chiappone, 984 A.2d at 36 (quoting Koziol v. Koziol, 720 A.2d 230, 233 (R.I. 1998)). Accordingly, "[t]his Court will not disturb a trial justice's findings unless it can be shown that the justice was clearly wrong or has overlooked or misconceived material evidence." Id. at 37 (quoting Mattera v. Mattera, 669 A.2d 538, 543 (R.I. 1996)).

"The justices of the Family Court are vested with broad discretion as they seek to fairly divide marital property between the parties in divorce proceedings." Horton v. Horton, 891 A.2d 885, 889 (R.I. 2006). "It is well established that the equitable distribution of property is a three-step process." Koutroumanos v. Tzeremes, 865 A.2d 1091, 1096 (R.I. 2005). "The trial justice

first must determine which assets are marital property, then must consider the factors set forth in § 15-5-16.1(a),[4] and finally, he or she must distribute the property." Id.

## 1. Pension Benefits

The plaintiff argues that the trial justice erred in awarding defendant 100 percent of her pension benefits. Particularly, he asserts that defendant hid her personal pension throughout discovery and that the Family Court erroneously found her testimony to be credible. With respect to the trial justice's award to defendant of "any and all retirement benefits from her recent employment or previous employment," there simply is no evidence that such retirement benefits exist, nor did the trial justice make any such finding. Indeed, defendant denied that she had any retirement plan whatsoever. If in the future it should be discovered that defendant in fact had been entitled to any retirement accounts or pension benefits, plaintiff would not be left without remedies.

---

[4] The complete list of factors that the court shall consider under G.L. 1956 § 15-5-16.1(a) are:
> "(1) The length of the marriage;
> "(2) The conduct of the parties during the marriage;
> "(3) The contribution of each of the parties during the marriage in the acquisition, preservation, or appreciation in value of their respective estates;
> "(4) The contribution and services of either party as a homemaker;
> "(5) The health and age of the parties;
> "(6) The amount and sources of income of each of the parties;
> "(7) The occupation and employability of each of the parties;
> "(8) The opportunity of each party for future acquisition of capital assets and income;
> "(9) The contribution by one party to the education, training, licensure, business, or increased earning power of the other;
> "(10) The need of the custodial parent to occupy or own the marital residence and to use or own its household effects taking into account the best interest of the children of the marriage;
> "(11) Either party's wasteful dissipation of assets or any transfer or encumbrance of assets made in contemplation of divorce without fair consideration; and
> "(12) Any factor which the court shall expressly find to be just and proper."

## 2. Dissipation of Assets

The plaintiff also avers that there was no evidence in the record to support a finding that he dissipated $7,000 of marital assets. At trial, he testified that at one time he was informed that there was an approximate balance of $4,000 in the ADP account, but that there were no longer any funds in the account. The plaintiff said that he took some funds out "to set up the house in Johnston for the children, and the rest was lost because [he] did[ ] [not] claim it in time." He also testified that there was a current balance of $400 in his pension account; defendant introduced a statement showing a "vested balance" of $3,131.66 as of September 30, 2013. In light of the trial justice's credibility determinations, we discern no cause to disturb his factual finding that plaintiff dissipated "in excess of $7,000" from these two accounts.

## 3. Real Estate Properties

The plaintiff further argues that the trial justice erred in awarding defendant exclusive possession of the Johnston property, as well as its rental income, as contrary to law and the evidence in this case. In accordance with the temporary order, plaintiff was required to pay the mortgage, insurance, and taxes with respect to the properties, and defendant was allowed to collect the rental income "for child support purposes." In his written decision, the trial justice made findings of fact to the effect that plaintiff had failed to comply with the temporary order concerning payment of bills with respect to the properties, and that defendant had been required to utilize the rental income to make mortgage payments. The plaintiff now argues that the trial justice did not properly weigh his testimony which, he claims, establishes that: (1) because of his criminal record, his income was significantly reduced, "(2) [defendant] refused to cooperate to save the property, and (3) all funds were going to [defendant]." The plaintiff, however, does not direct our attention to any specific parts of the record to support his contentions.

- 12 -

Our review of the record, on the other hand, leads us to conclude that the trial justice's factual findings are supported by the evidence and that he conducted an appropriate analysis under § 15-5-16.1 in distributing the marital assets.[5] We reiterate the trial justice's assessment that plaintiff's testimony was "for the most part unworthy of belief," noting that credibility determinations are uniquely entrusted to a trial justice. See In re Estate of Ross, 131 A.3d 158, 167 (R.I. 2016) ("[W]e 'accord a substantial amount of deference to th[e] [credibility] determinations, due to the fact that the trial justice * * * has had an opportunity to appraise witness demeanor and to take into account other realities that cannot be grasped from a reading of a cold record.'") (quoting D'Ellena v. Town of East Greenwich, 21 A.3d 389, 392 (R.I. 2011)). Moreover, the trial justice found that the Johnston property had no equity, both parties having testified that the outstanding mortgage balance exceeded the fair market value of the property. The trial justice was not clearly wrong, therefore, nor did he misconceive or overlook evidence in awarding the Johnston property to defendant.

### 4. Marital Debt

Finally, plaintiff avers that the trial justice miscalculated the parties' marital debt by not accounting for his testimony concerning said debt. At trial, he testified owing between $5,000 and $6,000 in credit-card debt. The record, however, lacks any documentary evidence to substantiate these amounts. The plaintiff also argues that the trial justice failed to factor into his decision the new debt from the foreclosed North Providence property which was solely in his name. The trial justice's findings with respect to marital debt are as follows:

---

[5] In pertinent part, § 15-5-16.1(a) indicates that the court "shall consider * * * [t]he length of the marriage; * * * [t]he conduct of the parties during the marriage; * * * [t]he need of the custodial parent to occupy or own the marital residence and to use or own its household effects taking into account the best interests of the children of the marriage; * * * and * * * [a]ny factor which the court shall expressly find to be just and proper."

- 13 -

"45. The [d]efendant's presentation of debt in the amount of $50,350.00 is credible and should in fact be considered marital debt.

"46. The [c]ourt found the testimony of the [d]efendant to be credible.

"47. The [c]ourt found the testimony of the [p]laintiff and his memory to be convenient, incredulous at times, and for the most part unworthy of belief.

"48. The [p]laintiff's explanation and/or lack of knowledge as to said debt, is absolutely incredulous."

Again, the issue of marital debt is a matter of credibility in which the trial justice accepted the defendant's testimony and rejected the plaintiff's testimony. After reviewing the record and the parties' submissions, we conclude that the trial justice did not misconceive the relevant evidence nor was he otherwise clearly wrong, and therefore we do not disturb his findings.

## IV

## Conclusion

For the foregoing reasons, the plaintiff's appeal is sustained in regard to the issue of child support. The record shall be remanded to the Family Court for consideration of the child-support guidelines when determining the amount of child support. The final decree is affirmed in all other respects.

Justice Flaherty did not participate.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**      Michael Vieira v. Amy Hussein-Vieira.

**CASE NO:**      No. 2015-329-Appeal.
(13-2045)

**COURT:**      Supreme Court

**DATE OPINION FILED:**      December 21, 2016

**JUSTICES:**      Suttell, C.J., Goldberg, Robinson, and Indeglia, JJ.

**WRITTEN BY:**      Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:**      Providence County Family Court

**JUDGE FROM LOWER COURT**:

      Associate Justice John E. McCann, III

**ATTORNEYS ON APPEAL:**

      For Plaintiff:   Michael Vieira, Pro Se

      For Defendant:  Frederick A. Costello, Esq.