May 11, 2021

**Supreme Court**

No. 2019-394-Appeal.
(P 16-5381)

Kellie Sullivan              :

v.              :

Timothy Sullivan.              :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Kellie Sullivan                    :

v.                          :

Timothy Sullivan.              :

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** The defendant, Timothy Sullivan, appeals from a decision pending entry of final judgment terminating his marriage to the plaintiff, Kellie Sullivan, on the grounds of irreconcilable differences. On appeal, the defendant asserts that the trial justice made several errors involving factual findings, marital assets, and marital debt. This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the decision pending entry of final judgment of the Family Court.

- 1 -

# I

# Facts and Travel

The parties were married on June 19, 2004, and have two children, born in 2005 and 2007.

In October 2016, plaintiff filed a complaint for divorce in Providence County Family Court, citing irreconcilable differences that had caused the irremediable breakdown of the marriage as grounds therefor, and she requested legal custody and physical placement of the children, child support, and equitable distribution of the marital assets. The defendant filed a counterclaim in April 2017, requesting that the parties be awarded joint legal custody of the children with physical placement assigned to him and child support awarded to him. He also sought medical and dental insurance coverage for himself and the children under plaintiff's health plan and asked the court to order plaintiff "to pay any and all reasonable and necessary uninsured or underinsured medical, dental, hospital, ophthalmologic and orthodontic services, including medicines and prescriptions, for the benefit of the said minor children, in excess of health insurance coverage[.]" The defendant also requested equitable distribution of the marital assets.

The case was tried over several days in 2018 with testimony by only plaintiff and defendant, most of which dealt with the parties' respective contributions to the

marriage—both financially and through household responsibilities—and the contested assets and debts.

The trial justice issued a written decision on July 3, 2019, granting both plaintiff's complaint and defendant's counterclaim for divorce. The trial justice began his decision by reviewing the parties' testimony; he indicated that plaintiff's "testimony was both candid and credible[,]" whereas defendant's testimony "was less than candid, not credible, and unworthy of belief[.]" He made a total of forty-one findings of fact.

The trial justice awarded the parties joint custody of the children, with physical placement awarded to plaintiff; plaintiff was given the opportunity to buy out defendant's interest in the marital domicile or, in the alternative, she and the children could occupy the marital domicile until the younger child attains the age of eighteen and completes high school. The trial justice found that plaintiff "was both the primary breadwinner during the marriage and also the primary homemaker" and that "[d]efendant's efforts to find employment over the last several years, commensurate with his education and experience, have been less than admirable, and border on lethargic[.]" He found that plaintiff earned a salary of approximately $100,000 and that defendant had an annual earning capacity of $85,000; the trial justice therefore directed that defendant pay to plaintiff $302 per week in child support. The trial justice additionally found that plaintiff had contributed to the

- 3 -

acquisition of defendant's MBA and that plaintiff had contributed substantial premarital assets to the marital estate.

With regard to the marital domicile, the trial justice found that the fair market value was $305,000, based upon the appraisals presented by both parties. He noted that, although "[d]efendant's parents contributed towards the acquisition of the marital estate, * * * it was [p]laintiff's efforts which were largely responsible for the preservation and appreciation in value of the same[.]" He set defendant's interest in the marital domicile at $152,500 "based upon the facts of this case and the application of the equitable distribution statute[.]"

The trial justice further found that defendant's parents had held a promissory note and a recorded mortgage encumbering the marital domicile in the amount of $150,000, which mortgage had been "paid in full on May 17, 2007[.]" He also found that defendant's mother had filed a collection suit against the parties in Massachusetts for $140,000, which the Massachusetts Superior Court had dismissed. The trial justice characterized the Massachusetts suit as "a nullity" and directed that defendant pay "reasonable costs or fees incurred by the [p]laintiff in the defense of said litigation[.]" The trial justice also directed that defendant obtain a discharge of the mortgage and promissory note from his mother.

The trial justice thereafter found that any and all pension assets and bank accounts acquired by plaintiff during the term of the marriage were marital assets;

he also found that all pension assets and bank accounts not converted into a joint account during the marriage, acquired by plaintiff prior to marriage, were not marital assets. He awarded 70 percent of said marital assets to plaintiff and 30 percent to defendant. Furthermore, the trial justice directed defendant to pay plaintiff his contribution towards running the marital domicile during the pendency of the case, which was set at $77,020.17 as of May 9, 2019. He additionally found that defendant's $39,000 credit-card debt was "not a marital debt, and should be assigned to the [d]efendant[.]"

A decision pending entry of final judgment, reflecting the directives of the written decision, entered on August 19, 2019. The defendant filed a timely notice of appeal on August 29, 2019.

## II

### Standard of Review

"This Court 'will not disturb findings of fact made by a trial justice or magistrate in a divorce action unless he or she has misconceived the relevant evidence or was otherwise clearly wrong.'" *Boschetto v. Boschetto*, 224 A.3d 824, 828 (R.I. 2020) (quoting *Vieira v. Hussein-Vieira*, 150 A.3d 611, 615 (R.I. 2016)). "Consequently, unless it is shown that the trial justice either improperly exercised his or her discretion or that there was an abuse thereof, this Court will not disturb the trial justice's findings." *Id.* (quoting *Vieira*, 150 A.3d at 615).

"The justices of the Family Court are vested with broad discretion as they seek to fairly divide marital property between the parties in divorce proceedings." *Boschetto*, 224 A.3d at 828 (quoting *Vieira*, 150 A.3d at 618). "It is well established that the equitable distribution of property is a three-step process." *Id.* (quoting *Vieira*, 150 A.3d at 618). "The trial justice first must determine which assets are marital property, then must consider the factors set forth in [G.L. 1956] § 15-5-16.1(a), and, finally, he or she must distribute the property." *Id.* (quoting *Vieira*, 150 A.3d at 619).

## III

## Discussion

### A

### Findings of Fact

On appeal, defendant first contends that the trial justice misconceived evidence and/or was clearly wrong in reaching several of his findings. Specifically, he argues that the trial justice erred in his findings regarding (1) the parties' respective contributions to the marriage; (2) plaintiff's contribution to defendant's acquisition of his MBA; (3) defendant's credit-card debt; and (4) defendant's earning capacity. We address each claim of error *seriatim*.

The defendant first argues that the trial justice erred in his findings on the parties' respective contributions to the marriage; he asserts that he contributed

substantial premarital assets to the marital estate, including $380,000 from the sale of his two premarital condominiums. He additionally contends that he contributed to the marital expenses until he lost his job and his unemployment benefits ran out in 2015 and that he contributed to the marriage with "non-monetary contributions." Accordingly, he argues that he deserves more of the marital estate than he was awarded.

In his decision, the trial justice thoroughly reviewed the testimony of the parties regarding specific assets, their respective employment histories, and the division of household labor and child care. While it is true that defendant contributed to the marital expenses until he became unemployed, the trial justice found that defendant's "efforts to find employment over the last several years, commensurate with his education and experience, have been less than admirable, and border on lethargic[.]" The defendant additionally indicated in his testimony that his parenting style was "hands-off" and that he does not "actively pursue helping [the children] with things; but, if they need help, [he]'ll help them"—he testified that he gets as "involved as they'll let me." The plaintiff, on the other hand, testified that she was the children's "primary caretaker as far as preparing meals, laundering their uniforms, pressing their uniforms, laundering their clothes[,]" making appointments, transporting them to extracurricular activities and medical appointments, helping

with schoolwork, volunteering at school weekly, and attending parent-teacher conferences.

Furthermore, while plaintiff's testimony regarding income, assets, and marital and family expenditures was detailed and specific, defendant's testimony regarding these topics was vague. It is clear from the testimony that the trial justice was correct in finding that plaintiff "was both the primary breadwinner during the marriage and also the primary homemaker[.]" Accordingly, we are of the opinion that the trial justice's findings regarding each party's marital contributions are amply supported by the record.

The defendant next contests the trial justice's finding that plaintiff contributed to the acquisition of his MBA. This argument is without merit; although defendant's father financed defendant's graduate-school education, plaintiff held a full-time job and was the primary homemaker and child-care provider during that time. Additionally, plaintiff testified that she was supportive of defendant in this endeavor, even though it took "away from time with the children and with [herself.]" Therefore, the trial justice did not misconceive relevant evidence, nor was he otherwise clearly wrong, when he found that plaintiff had contributed to defendant's acquisition of his MBA.

The defendant next argues that the trial justice erred in assigning his $39,000 credit-card debt to defendant, rather than finding that debt to be a marital debt.

Although defendant claims that the credit card was used for household expenses, he was unable to provide any credit-card statements or any other evidence identifying the charges, nor could he articulate what charges were for marital expenses and what charges were for business expenses. We also note that defendant agreed that plaintiff had previously paid off an $18,000 debt on a credit card in defendant's name, and he did not dispute that plaintiff had asked him to cut up the credit card. In light of the trial justice's credibility findings, we are satisfied that he acted within his discretion in assigning the $39,000 credit-card debt to defendant.

The defendant also asserts that the trial justice erred in finding that defendant has an annual earning capacity of $85,000. The defendant notes that there were no "vocational experts" at trial and that, therefore, it is unclear how the trial justice was able to determine his earning capacity. The trial justice, however, considered defendant's educational background, the fact that he holds an MBA, and his employment history, noting that defendant's highest annual earnings during the marriage were approximately $52,000, while he was employed by his family's business. Critically, the trial justice found that defendant had not been employed full-time since 2012, and that his efforts to find employment had been woefully inadequate. The trial justice did not misconceive evidence, nor was he clearly wrong, in ascribing to defendant an annual earning capacity of $85,000.

## B

## Debt Owed to Defendant's Parents

The defendant additionally contends that the trial justice erred in addressing the debts owed to his parents.

The defendant first asserts that the decision pending entry of final judgment does not address an undocumented $168,000 loan from his parents purportedly used to fund the acquisition of his premarital condominium, which later became the parties' initial marital home. However, the trial justice did address defendant's claim that the "undocumented loan" was transmuted into a marital debt, and he rejected it. The trial justice noted that plaintiff had testified that "[s]aid mortgage was paid off in part during the course of their marriage" and, during the trial, defendant provided no documentation of the loan or of the payments made to his parents. Accordingly, the trial justice deemed defendant's testimony and the alleged loan, with no documentation, as "poppycock." Because no evidence of such a loan was provided, other than defendant's testimony, we find no error with the trial justice's determination.

The defendant also claims error in the trial justice's decision ordering that defendant pay plaintiff's attorneys' fees accrued from defending the suit that defendant's mother filed against the parties in Massachusetts to secure payment on the purported mortgage.

It is well-settled that "determining what constitutes marital property and dividing it in an equitable fashion 'is within the sound discretion of the trial court.'" *Palin v. Palin*, 41 A.3d 248, 256 (R.I. 2012) (quoting *Curry v. Curry*, 987 A.2d 233, 238 (R.I. 2010)). "Although § 15-5-16.1 does not explicitly permit a trial justice to assign marital debt, we previously have reviewed lower courts' assignments of marital debt in the same fashion as assignments of marital assets." *Id.*; *see Curry*, 987 A.2d at 239, 240 (affirming trial justice's assignment of student-loan debt, taken out by husband for son's education, to husband); *Koutroumanos v. Tzeremes*, 865 A.2d 1091, 1098-99 (R.I. 2005) (affirming classification of credit-card debt as marital debt and assignment of such debt to husband). "[A] trial justice properly may consider all the circumstances surrounding the debt, including the purpose of the debt, the receipt of the benefits, the conduct of the parties concerning the debt, the consent or lack thereof by the nonsignatory spouse, and the knowledge of the debt by said spouse at the time the debt was incurred." *Palin*, 41 A.3d at 256. Furthermore, "as long as this Court is able to review a lower court's decision and to determine therefrom that all the necessary facts and statutory factors were considered, the trial justice need not explicitly list his or her findings on each factor." *Id.* (brackets omitted) (quoting *Curry*, 987 A.2d at 238).

Although he did not explicitly name it as such in his decision, it is clear to us that the trial justice classified the attorneys' fees incurred by plaintiff as a marital

- 11 -

debt. *See Palin*, 41 A.3d at 256. The trial justice found that "[p]laintiff was forced to retain counsel to defend against" defendant's mother's collection suit in the Commonwealth of Massachusetts, which suit "th[e] [c]ourt considers a nullity[.]" He further found that "[d]efendant allowed his suit to be defaulted, without any reasonable explanation[,]" and concluded that "[b]ased upon the facts and circumstances leading up to said Massachusetts lawsuit, and [d]efendant's actions or lack thereof, * * * any and all reasonable costs or fees incurred by the [p]laintiff in the defense of said litigation, should be borne by the [d]efendant." One such circumstance, he found, was defendant's failure to obtain his parents' discharge of the $150,000 mortgage and promissory note. It is evident that the trial justice considered "all the circumstances surrounding the debt" before assigning the debt to defendant. *Id.* Accordingly, we hold that the trial justice did not err in assigning to defendant the attorneys' fees incurred by plaintiff.

The defendant additionally argues that the trial justice erred when he determined that defendant is responsible for obtaining a mortgage discharge from defendant's mother with respect to the loan taken by the parties to purchase the marital domicile. Although defendant asserts that the trial justice attempted to compel a nonparty to discharge a mortgage, the trial justice provided an alternative route by authorizing plaintiff to commence suit in Superior Court to quiet title "[i]n the event the [d]efendant is unable to obtain said discharge[.]" It is clear to us that

the trial justice was not attempting to compel nonparty action; he was merely seeking an efficient resolution of this issue. We therefore hold that the trial justice did not err in ordering defendant to secure a mortgage discharge from his mother or, in the alternative, by making him responsible "for all reasonable fees and costs necessary to clear said title as it pertains to the yet undischarged mortgage to [d]efendant's parents."

## C

### Premarital and Marital Assets

The defendant next argues that the trial justice erred in failing to accord him any of the marital appreciation of plaintiff's premarital accounts.

This Court has held that "[t]he appreciation of the value of an investment account may be subject to equitable distribution pursuant to § 15-5-16.1(b)." *Boschetto*, 224 A.3d at 829. The relevant portion of § 15-5-16.1(b) states that "the court *may* assign the appreciation of value from the date of the marriage of property or an interest in property which was held in the name of one party prior to the marriage *which increased in value as a result of the efforts of either spouse during the marriage*." (Emphasis added.)

In the decision pending entry of final judgment, the trial justice awarded plaintiff all right and title to her premarital pension assets, including appreciation in value, because the "increase was passive and not due to the efforts of either party

- 13 -

during the marriage[.]" He also awarded plaintiff all right and title in her premarital bank accounts, not converted into joint accounts, and their appreciation in value, "based upon the facts of this case and the components of the equitable distribution statute." He then awarded defendant 30 percent of plaintiff's pension and bank account acquired *during* the marriage.

We discern no error in the trial justice's application of the equitable distribution statute or in the division of premarital assets. As evinced by the use of the word "may[,]" § 15-5-16.1(b) is discretionary in nature—the trial justice was not required to assign a portion of the appreciation in value of plaintiff's premarital pension assets or premarital bank accounts to defendant. *See* § 15-5-16.1(b). Furthermore, the trial justice found that any increase in the pension assets was passive, and not due to the parties' efforts, putting it squarely outside of the equitable distribution statute. *See id.* Accordingly, we hold that the trial justice did not err in not according defendant any of the appreciation of plaintiff's premarital accounts.

Finally, the defendant claims that the trial justice erred in preventing him from exploring the plaintiff's dissipation of marital assets. The defendant, however, fails to point to any specific ruling by the trial justice that the defendant challenged in Family Court by way of objection, or to questions he was prevented from asking the plaintiff. Thus, we will not disturb the trial justice's finding that the plaintiff did not dissipate marital assets and that she was "quite frugal and responsible for the

preservation of said assets and was further forthright in her testimony as to numerous bank accounts and the present status of the same[.]"

## IV

## Conclusion

For the reasons stated herein, we affirm the decision pending entry of final judgment of the Family Court. The record may be returned to the Family Court.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Kellie Sullivan v. Timothy Sullivan. |
| **Case Number** | SU-2019-0394-Appeal. <br> (P 16-5381) |
| **Date Opinion Filed** | May 11, 2021 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Family Court |
| **Judicial Officer from Lower Court** | Associate Justice John E. McCann, III |
| **Attorney(s) on Appeal** | For Plaintiff: <br><br> Thomas M. Dickinson Esq. |
| | For Defendant: <br><br> Jerome V. Sweeney, III <br> Sean P. Keough, Esq. |